(70 App. Div. 294.)

PEOPLE ex rel. ARGUS CO. v. BRESLER, Clerk of Common Council, et al.

(Supreme Court, Appellate Division, Third Department. March 21, 1902.)

MUNICIPAL CORPORATIONS—COMMON COUNCIL—RESIDENT'S RIGHT TO VOTE.

Laws 1898, c. 182, § 12, makes the common council of a city of the second class a legislative body, composed of an alderman from each ward, and a president elected from the city at large, the "president and aldermen thus elected" to "constitute the common council." Section 14 requires the president to discharge such duties as are imposed by the act and by the ordinances of the council, and gives him the right to vote in case of a tie. Section 29 provides, as to the designation of official newspapers, that "each member shall be entitled to vote for one of the papers," and sections 14, 15, 17, 19, 21, 25, and 27 provide for the doing of various other things by the vote of certain majorities of the "members" of the council. *Held* that, inasmuch as the legislature could not have intended to create a legislative body which was not representative, the president had no right to vote as a member of the council, except in case of a tie.

Appeal from special term, Albany county.

Mandamus by the people, on the relation of the Argus Company, against Frederick U. Bresler, clerk of the common council of the city of Albany, and another, to compel the clerk to deliver to relator for publication matters required by law to be published in the city's official papers. From an order denying the writ (75 N. Y. Supp. 87), relators appeal. Reversed.

Argued before PARKER, P. J., and SMITH, KELLOGG, CHASE, FURSMAN, JJ.

Amasa J. Parker, for appellant.
Arthur L. Andrews, for respondent Bresler.
John F. Montignani, for respondent the Press Company.

KELLOGG, J. The question presented by this appeal relates to the right of the president of the common council of a city of the second class to vote in the designation of an official newspaper. The special term interpreted the statute as giving to the president such right. I think in this the learned court was in error. The common council mentioned in the act (chapter 182, Laws 1898) is a legislative body. "Its authority, except as otherwise provided in this act,

or by other laws of the state, is legislative only." Section 12. The common council is composed of one alderman from each ward, and a president elected from the city at large. The wards have equal representation in the legislative body if we do not give to the president aldermanic powers, and, if we do, the ward in which the president happens to reside has a representation in the legislative body for all purposes twice that of any other ward. Such a scheme might be the subject of just criticism. That it was not the intention of the legislature to give to the president all the powers possessed by the aldermen is manifest by the provisions of section 14: "The president may vote like other members of the common council upon all resolutions and ordinances submitted to the body for its action in case of a tie vote." If the president had, by the general provisions of the act, the right to vote as alderman, there would have been no need of giving him the right to vote in case of a tie vote. This must be interpreted as a denial of the right to vote in all other cases. Counsel for the Press Company asks us to interpret the legislative intention as meaning "must vote," instead of "may vote," when there is a tie vote on resolutions and ordinances; but this could hardly be counted a cure for deadlocks. If the president had the same right as aldermen to vote on all propositions, his vote might as often make a tie as dissolve one. But the reasoning of the learned counsel illustrates the difficulty of maintaining any middle ground. It was either the intention of the legislature to give to the president the right to vote the same as aldermen on all propositions, or it was its intention to give him the right to vote only in case of a tie vote upon resolutions and ordinances. It appears to me that there is no escape from this conclusion. That it was not the intention of the legislature to invest the president with all the powers of an alderman in the legislative body seems to me very clear. The status and functions of the president are different from those of aldermen. He is elected as a city officer by the city at large, and is to receive a salary fixed by the act. His duties are defined by the act, and are not the duties imposed upon the aldermen. He is to preside at the meetings of the common council. He has power to convene the common council. He is made a member of the board of estimate and apportionment. He is required to "discharge such other duties as president as may be defined by ordinances of the common council and other provisions of this act" (section 14), and he has the right to vote on ordinances and resolutions in case of a tie. "The president and aldermen thus elected shall constitute the common council." Without doubt he may be regarded as a member of that body, but a member with different powers than those possessed by the aldermen, and not clothed with aldermanic powers. Great stress is laid upon the wording in section 29, "each member shall be entitled to vote for one of the papers," and it is urged that this gives the president express authority to vote on this question. There appears to be no special reason why he should be permitted to vote on this question unless he is a voting member of the council, and entitled to vote on every question. I see no particular significance in the use of the term "each member." It was a provision restricting a mem-

ber from voting for more than one paper, and was naturally expressed in this way. If the legislature had intended to give to the president a right to vote on this question, it would have included it in the provision (section 14) conferring a power to vote in case of a tie. The term "member" is used very often in this act, and it does not appear to me that in its use the legislature intended to refer to any one other than the aldermen, and did not intend to include the president, or to give him the right to vote in matters referred to. Section 15 provides for the choosing of a clerk "by a vote of three-fourths of all the members." Section 16: "The president of the common council or a majority of its members may call a special meeting." Section 17: "A majority of all its members shall be a quorum." Section 19: "No appropriation of money shall be made * * * except by ordinance passed by three-fourths of all the members. * * * No ordinance shall be passed * * * authorizing * * * a sale or lease * * * except by a vote of three-fourths of all the members of the common council." Section 21: After the mayor's veto the ordinance cannot be passed "unless three-fourths of all members of the common council" vote for it. Section 25: "The common council may by ordinances passed by two-thirds of all its members" regulate the powers and duties of any city officer or department. Section 27: No expulsion shall take place or vacancy be declared "except by the vote of three-fourths of all the members of the common council." Then follows section 29, before quoted, as the sole reliance for authority in the president to vote: "Each member shall be entitled to vote for one of the papers." Following this, in the same section, it is provided: "In case any of the official papers shall refuse or fail to act or perform as such the common council may designate another paper in its place." The inquiry is pertinent here, can the president vote on this proposition? The "common council" must designate; that is, the members of the common council—each member—may vote. The act authorizes the "common council" to do many things; that is, it authorizes each member of the common council to vote on the subject. And the act would have no greater significance if it had said "each member shall be entitled to one vote" on the question before the common council. To give, therefore, to this form of expression, occurring in section 29, the meaning claimed for it,—that it confers upon the president the power to vote, and thereby changes the voting force in the common council,—it seems to me does violence to the otherwise apparent intention of the legislature. It punctures and distorts a reasonable governmental scheme, and creates unnecessary confusion and doubt as to when and on what occasions the president may exercise the functions of the alderman and when not, when he must be counted in determining a majority vote, or a two-thirds or three-fourths vote, or a quorum. If, as I believe, it was the intention of the legislature not to make the president, elected by the city, a member of the legislative body except so far as specific functions are conferred, viz., the right to call the council together, to preside at their meetings, with a vote upon the passage of ordinances and resolutions when there is a tie in the legislative body, then we have a scheme work-

able and comprehensible, a legislative body constructed on a plan analagous to that of other legislative bodies, composed of members from each separate ward of the city, giving to each section equal representation, and with no confusion as to the meaning of the plan or as to powers of its component parts. This is a general act, and affects all cities of the second class, and no confusing interpretation should be read into it unless it is impossible to read it otherwise.

The order should be reversed, with $10 costs and disbursements against the Press Company, and writ of mandamus prayed for be directed to issue, without costs. All concur.