THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE ARGUS COMPANY, Respondent, *v.* FREDERICK U. BRESLER, as Clerk of the Common Council of the City of Albany, et al., Appellants.

MUNICIPAL CORPORATION — PRESIDENT OF COMMON COUNCIL OF CITY OF SECOND CLASS CANNOT VOTE FOR DESIGNATION OF OFFICIAL NEWSPAPER.   Under the provisions of the charter for cities of the second class (L. 1898, ch. 182, §§ 13, 14) the president of the common council has not the same right to vote as an alderman upon all questions coming before the common council for its action — his right to vote "like other members" is expressly limited to resolutions and ordinances submitted, and then only "in case of a tie vote," *i. e.*, he has the right to vote to break a tie vote; he is not included in that clause of section 29 relating to the designation of official newspapers and providing that "each member shall be entitled to vote for one of the papers;" and has no power to vote upon the designation of such newspapers even in case of a tie in the votes cast for them.

*People ex rel. Argus Co.* v. *Bresler,* 70 App. Div. 294, affirmed.

(Argued May 6, 1902; decided May 20, 1902.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered March 22, 1902, which reversed an order of Special Term denying a motion for a peremptory writ of mandamus directing the defendant Bresler to deliver to the relator all copy required by law to be published in the official papers of the city of Albany.

The facts, so far as material, are stated in the opinion.

*Arthur L. Andrews* for Frederick U. Bresler, appellant. The president of the common council is a member of the common council within the meaning of that term as used in the provision of the charter for the designation of official newspapers. (L. 1898, ch. 182.)

*John F. Montignani* and *William P. Rudd* for The Press Company, appellant. In looking for the intent of the legislature not only the language of a statute may be resorted to, but also the circumstances under which it was enacted. (*People ex rel.* v. *Spicer*, 99 N. Y. 225; *People ex rel.* v. *Lacombe*, 99 N. Y. 49; *Matter of Breslin*, 45 Hun, 210; *People ex rel.* v. *Gilon*, 76 Hun, 346; *People* v. *U. Ins. Co.*, 15 Johns. 358; *Dresser* v. *Brooks*, 3 Barb. 429; *Pryor* v. *City of Rochester*, 166 N. Y. 548.) The intention of the lawgiver is deduced from a view of the whole and of every part of a statute compared together. (*People* v. *Draper*, 15 N. Y. 532.) The president of the common council is everywhere in chapter 182 of the Laws of 1898 considered as not only a member of the council but as an essential and necessary part of that legislative department of the government. (*Pryor* v. *City of Rochester*, 166 N. Y. 548.) As a representative from the city at large the president has all the voting powers of every other member of the common council. (*People* v. *Charbineau*, 115 N. Y. 436.) There is no express or necessary abrogation or restriction of the president's power to vote in section 14 of chapter 182. (*Matter of Tobin*, 53 App. Div. 458; *People ex rel.* v. *Supervisors*, 51 N. Y. 401;

.*Phelps* v. *Hawley*, 52 N. Y. 23 ; *Hagadorn* v. *Raux*, 72 N. Y. 586 ; *Smith* v. *Floyd*, 140 N. Y. 337 ; *Mayor, etc.,* v. *Furze*, 3 Hill, 612.)　The act of the president of the council in voting to break this tie was within the intent of the legislation and the language of the statute. (*Matter of Ehrsam*, 37 App. Div. 272 ; *Perkins* v. *Smith*, 116 N. Y. 441.)

*Amasa J. Parker, Jr.*, for respondent.　The president of the common council had no right to vote under section 29, as that section does not, expressly confer on him the right to vote. (*People ex rel.* v. *Ransom*, 56 Barb. 514 ; *Matter of Dudley*, 33 App. Div. 465.)　The intent of the legislature was that the president of the common council should not vote except upon a resolution or ordinance, in case of a tie. (*Pryor* v. *City of Rochester*, 166 N. Y. 548.)　Powers conferred upon officers are to be strictly construed. (*Maxwell* v. *Tolly*, 26 S. C. 77 ; Throop on Corp. § 566 ; *Cassidy* v. *City of Brooklyn*, 47 N. Y. 659 ; *Achley's Case*, 4 Abb. Pr. 36 ; *People ex rel.* v. *Rector, etc.*, 48 Barb. 683 ; *People ex rel.* v. *Schroeder*, 76 N. Y. 160 ; *Cassidy* v. *City of Brooklyn*, 10 Abb. [N. S.] 297 ; *Jones* v. *Reed*, 1 Johns. Cas. 20 ; *L. E. R. R. Co.* v. *City*, 65 Hun, 494 ; *People ex rel.* v. *Common Council*, 47 N. Y. S. R. 149 ; *Peck* v. *City of Rochester*, 18 N. Y. S. R. 244.)　The sentence in section 29, that " Each member shall be entitled to vote for one of the papers," is merely directory. (*Delafield* v. *Brady*, 108 N. Y. 524 ; *People* v. *Utica Ins. Co.*, 15 Johns. 358 ; *Jackson* v. *Collins*, 3 Cow. 89 ; *L. S. & M. S. R. R. Co.* v. *Roach*, 80 N. Y. 339 ; *People* v. *Cook*, 14 Barb. 291 ; *Ex parte Heath*, 3 Hill, 43 ; *R. T. Co.* v. *Mayor, etc.*, 128 N. Y. 510 ; *Riggs* v. *Palmer*, 115 N. Y. 506 ; *Hurst* v. *City of New York*, 55 App. Div. 73.)

GRAY, J.　This proceeding was instituted on the relation of the Argus Company to obtain a peremptory writ of mandamus, directing the clerk of the common council of the city of Albany to furnish to the relator all the printed matter and

" copy " required by law to be published in the official news-
papers of said city.

The city of Albany is one of the cities of the second class
and, as such, is governed by the provisions of chapter 182 of
the Laws of 1898. Section 29 of its statutory charter pro-
vides as follows : " At the first meeting of the common coun-
cil after the election of its members, it shall, by a *viva voce*
vote, designate two daily newspapers published in the city to
be the official papers of the city. Each member shall be
entitled to vote for one of the papers, and the two papers
having the highest number of votes shall be the official papers
for two years and until others are designated. Such papers
shall publish the proceedings and ordinances of the common
council and all other matters required by law or by ordinances
of the city to be published." Pursuant to this section, the
Albany Evening Journal and the Argus had been designated,
in 1900, as the official newspapers for the ensuing two years.
In January, 1902, at the first meeting of the common council,
there attended all of the members, to the number of nineteen,
and the president of the common council. A resolution was
offered in the following language, viz. : " Resolved, That the
Common Council proceed to designate two daily newspapers
published in the city to be the official papers of the city ; that
the clerk call the roll, and that each member rise in his seat
and state his choice, pursuant to section 29 of the charter."
The resolution was adopted and the president of the common
council announced " that the Common Council would now
proceed to designate the official papers of the city by *viva
voce* vote." The clerk called the roll and the result of the
voting was as follows : The Albany Evening Journal received
seven votes ; the Albany Argus received five votes ; the
Press-Knickerbocker-Express received five votes, and the
Times-Union received two votes. After these votes had been
given, the president of the common council immediately
voted for the Press-Knickerbocker-Express and, thereupon,
" declared that the Albany Evening Journal and the Press-
Knickerbocker-Express had received the highest number of

votes and the same were duly designated by the Common Council as the official newspapers of the City of Albany for the years 1902 and 1903." The relator, The Argus Company, claims that the president of the common council had no right to vote, and, if he had not, that there was no designation of official papers, as between the Argus and the Press-Knickerbocker-Express, because of the tie vote by the aldermen; that, therefore, the Argus holds over as one of the official papers and that relator was entitled to the peremptory writ of mandamus prayed for.

There is no dispute about the facts and the question of law, with respect to the right of the president of the common council to vote as he did, is to be decided upon a construction of the provisions of the said charter. Section 13 of the charter provides as follows: "There shall be elected at the first election under this act, and at the city election every two years thereafter, a President of the Common Council from the city at large, who shall receive an annual salary of one thousand dollars, and one alderman from each ward of the city, who shall have been a resident in such ward for at least five months prior to such election, who shall hold their offices for two years; and the President and aldermen thus elected shall constitute the Common Council."

Section 14 provides, with respect to the president of the common council, that he shall have certain powers and certain duties, by virtue of his office, and then, expressly, declares as follows: "The President may vote like other members of the Common Council upon all resolutions and ordinances submitted to the body for its action in case of a tie vote."

The argument, in opposition to the claim of the relator, is that the president and aldermen, together, constitute the common council and that the president, as a member thereof, is entitled to vote whenever members are authorized to vote. It is contended that the action of the common council is individual and not legislative, and, further, that a proper construction of the provision in section 14, as to the president's right to

vote, is that of a command to him in case of a tie vote upon resolutions and ordinances submitted, and that the words "may vote" are equivalent to, and should read, "must vote."

We think that the construction given to the statutory provision, by the Appellate Division, is the correct one. It was the view of that court, as expressed in the opinion delivered by Mr. Justice KELLOGG, that, if the president had, under the statute, "the right to vote as an alderman, there would have been no need of giving him the right to vote in the case of a tie vote," and that it was clear that the legislature did not intend to invest the president with all the powers of an alderman. As a general rule, the mayor presides at the meetings of the governing body of a municipal corporation and has the right to vote in case of a tie vote. (Dillon on Munic. Corporations, § 270.) The question, however, whether he, if such presiding officer, or any other person, who is such officer under the charter, has a general, or a restricted, right to vote with the body, is one of construction. By the provisions of this charter, the president of the common council was distinguished, or set apart, from the other members of that body by the manner of his election and by the functions and duties with which he was specifically invested. He is to be elected from the city at large; he receives an annual salary; he is to preside at all meetings, and he must discharge such duties as president, as might be defined by ordinances of the common council and other provisions of the act. His power to "vote like other members of the Common Council" is expressly limited to "all resolutions and ordinances submitted to the body for its action, in case of a tie vote." That is to say, in such matters, he has the right to vote to break a tie vote. It is of some aid in our construction of the statute to consider the change, which was made by the legislature, upon receiving the report of the commission, appointed, in 1895, to propose a uniform charter for cities of the second class. As the section was reported by the commission, the members of the common council were to "choose one of their number president, who shall preside at all meet-

ings * * * hold his office to the end of his aldermanic term, and * * * *may vote like other members of the Common Council upon all resolutions and ordinances* submitted to the body for its action."* The legislature, in passing upon the report, as to this section, changed the general authority to vote, thus conferred upon the president, to an authority to vote upon all resolutions and ordinances, " in case of a tie vote."* This material change in the language is significant of an intention on the part of the legislature to confine the powers of the president, as a member of the common council, to such as are ordinarily exercised by presiding officers, filling that office *virtute officii* and not as a member of the body. He is a statutory officer, elected from the people at large, with prescribed functions. The declaration of his powers in the statute, impliedly, excludes his investment with any other, or broader, powers. (See *People ex rel. Gaskill* v. *Ransom*, 56 Barb. 514, and *Matter of Dudley*, 33 App. Div. 465.) The argument that section 29, in providing that " each member shall be entitled to vote for one of the papers," must comprehend all of the members, who are constituent parts of the common council, as a body, begs the question. The language must be read in the light of the previous limitations upon the power of the president to vote, contained in section 14. It is the expression of a legislative intent to provide for the selection of an official newspaper by a minority of the common council and, for the effectuation of such a purpose, each alderman was permitted to vote for only one paper. Viewed thus, the plan of the statute is clear and intelligible, as one for a fair distribution of the power of selection among the aldermen elected from the different wards. If there were no reference, nor expression as, to the president's power to vote in the statute, the argument would be strong, from inference and upon principle ; but the language of the section is a provision, and the only one, upon the subject of the president's right, in that respect, and, therefore, must have marked meaning. As it is well pointed out by Mr. Justice Kellogg, in his analysis of the provisions of various other

sections with respect to the voting by members of the common council upon matters within its province, preceding section 29, (See secs. 15, 16, 17, 19, 21, 25, 27), the legislature must have intended by the term "members" to indicate an alderman and not the president of the body.

The only question presented is upon the situation, as it was created by the action of the common council, at its first meeting in January, 1902. Was there a valid designation of the Press-Knickerbocker-Express, as one of the official newspapers? No other question arises as to what might have been further done, had the president not cast his vote. We think that the president was without power to vote as he did and, therefore, by reason of the tie vote between the Argus and the Press-Knickerbocker-Express, that there was no designation of an official paper.

The order appealed from should be affirmed, without costs.

PARKER, Ch. J., O'BRIEN, HAIGHT, CULLEN and WERNER, JJ., concur; BARTLETT, J., not voting.

Order affirmed.