In the Matter of the Application of FRANCIS J. HEAFY, Respondent, for the Delivery to Said FRANCIS J. HEAFY, as Clerk of the Common Council of the City of Yonkers and City Clerk of Said City, by WILLIAM H. McCABE, Appellant, of All Books and Papers, Money and Property Belonging or Appertaining to the Office of City Clerk of the City of Yonkers.

Second Department, January 29, 1936.

*Leonard G. McAneny, Corporation Counsel [Morris L. Rosenwasser and J. Raymond Hannon with him on the brief], for the appellant.*

*William J. Wallin, for the respondent.*

CARSWELL, J. May the president of the common council of Yonkers vote on the appointment of a city clerk? May the question be decided in this proceeding?

On January 2, 1934, McCabe was appointed clerk by the common council for a term of two years. In November, 1935, a new council of twelve aldermen was elected. Each of the two major parties had six. One Cotter was elected at large as president of the common council.

The council convened January 2, 1936, Cotter presiding. Over parliamentary objections, Cotter cast the deciding vote on the adoption of the following *resolution:*

" Resolved by the Common Council of the City of Yonkers, in meeting assembled, That Francis J. Heafy be chosen clerk and that the clerk take a roll call of the members and enter the ayes and nays on the journal."

Cotter then issued to Heafy a certificate of his election. Heafy filed it in the city clerk's office. He took the constitutional oath of office and duly filed it. Approval of his proffered surety undertaking by local officials was refused.

Heafy then demanded the books, papers and property of the office from McCabe, subject to the filing of the undertaking. The demand was refused solely because the city clerk believed Heafy had not been legally chosen.

Thereupon Heafy moved under section 80 of the Public Officers Law for a turn-over order. The Special Term granted Heafy's motion, and from the order entered thereon McCabe appeals.

Appellant urges that Heafy did not establish a *prima facie* title to the office and that, therefore, the court was without jurisdiction to make the order. A limited·inquiry into title to office is here permissible. Respondent Heafy is entitled to a ruling on the propriety of Cotter's vote. If it was valid, then Heafy's title to the office appears *prima facie;* no further inquiry into title may be had in this proceeding and the order is proper. (*Matter of Brenner,* 67 App. Div. 375; affd., 170 N. Y. 185.) In so far as *Matter of Bradley* (141 N. Y. 527) requires resort to proceedings by quo warranto, it is readily distinguished.

This brings us to the pertinent sections of the Second Class Cities Law. They read:

" § 31. Members; president; organization of council. The aldermen of the city shall constitute the common council * * *. The president may vote *like other members of the common council* upon all *resolutions and ordinances* submitted to the body for its action in case of a tie vote * * *.

" § 32. City clerk. The common council shall choose a clerk to hold office during the term for which its members were elected * * *."

" § 34. Powers. * * * *All appointments* or designations made by the common council *shall be determined upon a vote taken by a roll call of its members*, and a statement of the choice of each member or the yeas and nays, if any, shall be entered upon the journal."

Section 32 says the common council is to " choose " the clerk. " Choose " includes " elect " and " appoint." (Gen. Const. Law, § 16.) Likewise the word " appoint " means to " elect " if the context so requires; and the word " appointments " in section 34 is the equivalent of " elections."

McCabe asserts that under section 31 the president may vote on " resolutions and ordinances " only when there is a tie vote and that the appointment of a clerk is not the proper subject of a resolution. He says that the selection of a clerk is exclusively for the common council and that the president is not a member thereof. He invokes statutory history to sustain this contention and as having legal significance.

The Second Class Cities Law, when enacted in 1898 (Laws of 1898, chap. 182), had in the original section 13 this provision: " *the president and* aldermen thus elected shall constitute the common council." When that law was amended (in 1906 and 1909) this provision was shifted to the present section 31 and it was changed to read: " The aldermen of the city shall constitute the common council thereof." The president was thus eliminated as a member.

In the 1898 statute, section 14 thereof, there was the provision: " The president may vote like other members of the common council *upon all resolutions and ordinances* submitted to the body for its action in case of a tie vote." That provision was carried without change or pertinent additions into the later enactments and is now at the end of section 31.

The change effected was merely to exclude the president as a member and to give him, as a non-member, the same voting power he had as a member. It may be that these amendments were legislative recognition of the propriety of the decision (later adverted

to) in *People ex rel. Argus Co.* v. *Bresler* (70 App. Div. 294; affd., 171 N. Y. 302).

Let us examine on principle the problem of the proper interpretation of these statutes. When a Governor or mayor appoints a subordinate official he exercises an administrative or executive power. When a judge appoints a clerk he does an administrative or executive act, not a judicial act. When a board of three or more appoint a clerk or a subordinate assistant, it does an administrative or executive act. When twelve men constituting a city council appoint a clerk or an assistant to carry out the mechanics of their activities, they, as a Legislature, do an administrative or executive act. (Dillon Mun. Corp. [5th ed.] § 529.) When it exercises its legislative power, it ordinarily acts through the adoption of ordinances or resolutions. The authority of the president, under section 31, to vote when there is a tie vote is limited to action upon " resolutions and ordinances." This language authorizes the president to break a deadlock of the council in respect of *legislative* action. The appointment of a clerk is not a legislative act and, therefore, not the proper subject of an ordinance or resolution or a vote by the president.

Section 31 provides that " The *members* of the common council shall meet in the room provided for the purpose on the second day of January after their election, * * * and organize." A part of the organization of a common council is the appointment of a clerk. He is their servant, to do their administrative work, as well as to do corresponding work for the city. Who shall do the administrative work of a common council is to be determined by the *members* of the common council, of which the president is not one.

The nature of the powers of this common council and the manner of their exercise explain why the State Legislature limited the right of the president to vote to " resolutions and ordinances." This view has judicial support.

It is said in *Foster* v. *Reno* (22 Ont. L. R. 413, 416): " This assumption [a contrary view] ignores the composite nature of the municipal council. It is a legislative body — a very wide law-making power has been conferred upon it. This power must be exercised by by-law. It is also an administrative body. Many duties are imposed upon it as to which it has no discretion — these duties it can discharge without the formality of a by-law. Indeed, the term ' by-law '— a law enacted by a subordinate legislative body — cannot be appropriately used when speaking of the discharge of a statutory duty."

But respondent Heafy asserts that the appointment of a clerk is permissible by resolution and when so done the president's right to vote comes literally within the phrase in section 31, " resolutions and ordinances." He cites Dillon on Municipal Corporations (5th ed.), sections 392 and 529. Section 392 reads: "A city council authorized to elect certain officers may, *where no mode of election is prescribed,* appoint them by resolution, and is not bound to elect them by ballot "

Section 529, after observing that a council when it elects officers acts as a " board " and may do so *inter alia* by " resolution," then states it may do so that way only " when the law does not in terms prescribe any precise method or form; " in other words, " where no mode of election is prescribed." This limitation is universally recognized, and where the method is prescribed its observance " is mandatory." (43 C. J. § 1004; *Matter of Obergfell,* 239 N. Y. 48; *People ex rel. Connelly* v. *Zeeh,* 85 Misc. 151; *Hill* v. *Rector,* 161 Ark. 574; 256 S. W. 848; 40 A. L. R. 814.)

When a general power, granted to a council, is to be exercised by ordinance or by law, an appointment by resolution is invalid. (*Connors* v. *Hillman,* 86 N. J. L. 490; 92 A. 59, and *Eckerson* v. *Englewood,* 82 N. J. L. 298; 81 A. 1070; affd., 83 N. J. L. 627; 86 A. 1103.)

This requires examination of section 34. Referring to the " powers " of the council, it provides: "All appointments * * * *shall be determined upon a vote taken by a roll call of its members, and a statement of the choice of each member* or the yeas and nays, if any, shall be entered upon the journal."

*Expressio unius est exclusio alterius* (Coke Litt. 210-a; Broom's Legal Maxims [8th ed.], 504) is applicable. We have here express mention of two methods of making an appointment and no mention of resolution or ordinance methods. Both the latter methods, under settled principles of construction, are excluded.

The quoted language permits of an appointment *viva voce,* and it is to that, when ordinarily exercised, that the yeas and nays clause refers; or it permits an appointment in another form of *viva voce* action, by " a vote taken by a roll call of its members, and a statement of the choice *of each member.*" A president, under section 31, as amended, is not a " member." This means that each member must, after a nomination is made, unless the vote be by ordinary form of *viva voce,* arise when his name is called on the roll and state his choice, when it will be recorded. This procedure affords each member an opportunity to reject the one nominated or to nominate and choose another. Resort to a resolution obstructs this form of choice. But whether it does or not, the statute pre-

scribes two precise methods by which an appointment is to be made and neither of these methods includes a resolution or an ordinance. Both methods prescribed are a form of *viva voce* procedure, one putting the individual member more definitely on record than does the other.

This interpretation of section 34 is confirmed by its history. The original provision in the 1898 statute, in section 33 thereof, reads: "All appointments or designations made by the common council shall be by *viva voce* vote."

The report of the joint legislative committee in 1906 stated (Senate Doc. 1906, vol. 8, No. 19): "We do not consider it desirable to make any changes of an important character. It has seemed wise, however, to establish uniformity, broaden its scope, reclassify its provisions, clarify its terms and condense its language."

We find that this section 33 was revised and the foregoing language was superseded by the quoted language in section 34 of the present act. That language retained the right to make appointments by ordinary *viva voce* vote in the present provision in respect of "yeas and nays." There was, however, a clarification of its terms so as to permit an alternative *viva voce* method of making appointments so that each member might be required to vote individually on a roll call and state his choice. In other words, the *viva voce* method was retained, with the added method of putting each individual on record, so that his constituents might know how he voted. This "clarificat on" does not encompass within it action by resolution or ordinance. If it was intended by the Legislature that this power of appointment might be exercised by ordinance or resolution, those terms would have been used in that section, especially since those very terms are the basis of limitation of power on the part of the president of the council in section 31, the third section immediately preceding the section (§ 34) which defines the manner of exercising the power of appointment.

Both appellant and respondent refer to *People ex rel. Argus Co.* v. *Bresler* (70 App. Div. 294; affd., 171 N. Y. 302). There the 1898 statute and the Charter of the City of Albany were involved. Charter section 29 provided for the designation of official newspapers for corporate publications. It prescribed that "by a *viva voce* vote * * * Each *member* shall be entitled to vote for one of the papers, and the two papers having the highest number of votes shall be the official papers." The president of the council, after a preliminary "resolution" on the subject, assuming to exercise the right to vote under old section 14 of the Second Class Cities Law, broke the deadlock with respect to one of the papers. Section 14, as previously indicated, provided, as does the present

section 31, that the president (then but not now a member of the council) " may vote like other members of the common council upon all resolutions and ordinances submitted to the body for its action in case of a tie vote." Analyzing at length (p. 297) the sections on how the body was constituted and who should be entitled to vote under the Second Class Cities Law to designate a newspaper, the court held the president had no power to vote.

The present language of the statute gives him precisely the same power, no more and no less; but does so under provisions that make him a non-member of the council.

The ground of decision was the limited character of the grant of power to him to vote on a resolution or an ordinance. In effect, the court enforced the distinction between this act, as an administrative or executive act, and the acts of the common council when it exercised its legislative power and expressed its legislative desires in the forms of resolutions or ordinances, in which latter event he president had a vote to break a deadlock.

The opinion of KELLOGG, J., was adopted (171 N. Y. 302, 307) and amplified with consistent reasoning, per GRAY, J.

If the president had no right to vote even when a member of the council in respect of a matter that concerned the designation of an official newspaper for the city and for the council, when a " resolution " was preliminarily used, as a consequence of his limited right to vote on a resolution or ordinance, he would have no right as a non-member to vote on a similar administrative act, to wit, the selection of a city clerk.

It would be possible to put the designation of an official newspaper directly in the form of a resolution or an ordinance, as it was there done indirectly, yet the court held the president had no power to vote in such a matter.

The nature of the act involved is the determinative factor. Putting an administrative act in the clothes or form of a legislative act, i. e., a resolution, does not change its true nature. The legislative purpose to limit the president's right to vote cannot be so thwarted. If it can, every council activity can be so transformed, the limitation of section 31 frustrated, and the president will have power in a deadlock to act without limitation on anything which is the subject of council action, contrary to the precise language of section 31, although not a member of the council and despite the fact that when he was a member it was decided that his right to vote was limited. (*People ex rel. Argus Co.* v. *Bresler, supra.*)

Administrative or executive acts of appointment may not be properly embodied in a resolution or an ordinance, to achieve a subversive objective, where there is in section 34 a specific and

precise manner set out for the making of such appointments, which manner of exercise of power is mandatory.

Respondent invokes *Matter of Brearton* (44 Misc. 247). It is said that case authorized the appointment of a clerk in the form of a resolution. The question there presented arose under the old section 33 of the Second Class Cities Law of 1898, which provided that " All appointments or designations made by the common council shall be by *viva voce* vote."

The appointment of a city clerk of Troy was involved. The legality of his selection was affected by whether a quorum was present and the manner of voting. It was held that a quorum was present, and that the taking of the vote by having each member state orally for whom he voted was a compliance with the above quoted provision, "All appointments * * * shall be by *viva voce* vote." No resolution was utilized. No question of the propriety of using a resolution to effect an appointment was involved. Reference to such a method was dictum, and the word " resolution " might well have been inadvertently used for " motion." The clerk's appointment was in strict compliance with the method presently specified in section 34.

Accordingly, the president of the council (Cotter) was not authorized to vote for the appointment of a city clerk. His vote was a nullity. The certificate of election issued by him to Heafy was invalid; the appellant McCabe continued as a hold-over (Public Officers Law, § 5) to be city clerk, as a result of the tie vote of those legally entitled to vote.

This same result ensued in *Matter of Commerdinger* (246 App. Div. 834). There the electors cast an equal number of votes for the candidates of the two major parties, and under Public Officers Law, section 5, the incumbent continued in office as a hold-over.

This statutory provision prevents ill consequences arising from a deadlock, either as a result of a vote of the electorate or of a board or legislative body. The interpretation placed on the statutes makes for no inconvenience in organizing in connection with committees of the legislative body. The entire body can function as a committee on any subject; or they can organize committees with equal representation to the two factions or groups on each committee and proceed with the local legislative business.

We must take the statutes as we find them. All we may do is to declare the law as expressed in the statutes. We cannot change statutes. We must leave that to the Legislature.

The order granting petitioner's motion should be reversed on the law, with ten dollars costs and disbursements, and the motion denied, with ten dollars costs.

LAZANSKY, P. J., YOUNG, HAGARTY and JOHNSTON, JJ., concur.

Order adjudging that Francis J. Heafy is the duly elected clerk of the common council of the city of Yonkers and directing the delivery to him of the books, papers, money and property belonging or appertaining to the office of the clerk of the common council and city clerk of said city of Yonkers, reversed on the law, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.