L. Barron Hill, J.
This proceeding poses one question, viz.: Has the Chairman of the Board of Supervisors of Suffolk County the power to record an abstention by a Supervisor as a negative vote?
The Suffolk County Charter (L. 1958, ch. 278) became a law March 21, 1958. The drafters, skilled in urban municipal law, were given the task of providing an alternative form of government tailor-made for Suffolk County. They failed to envisage the ingenuity and sophistication of rural lawmakers.
The facts are not in dispute. Petitioner, Arthur M. Cromarty, is the Supervisor of Babylon Township and, as such, sits on the Board of Supervisors with the Supervisors of nine other towns. At the organizational meeting of the board on January 4, 1961, all 10 members being present, Supervisor Leonard was nominated and elected presiding officer. The vote was recorded nine in favor, none opposed, and one, Supervisor Leonard, not voting. *406 The first resolution fixing the time for the regular meetings of the board passed unanimously. Then, the - County Executive submitted for approval of the board his appointment for County Attorney.
A resolution, numbered No. 2, was offered approving such appointment. The vote thereon was : five (5) in favor, four (4) opposed, and one (1), the petitioner., not voting. Newly elected Chairman Leonard then made the following statement: “I am advised by the Acting County Attorney that, in accordance with the rules of laws and reason, under the present circumstances the abstention of Supervisor Cromarty shall' be counted as a vote. While it may be that such abstention should be counted as an affirmative vote in favor of the resolution, I hereby declare the abstention of Supervisor Cromarty - is to be counted as a negative vote and a vote opposed to the adoption of resolution and I direct the Clerk of the.Board of Supervisors to so record it. I further declare that there is, therefore, a tie vote on the question of the adoption of the resolution — 5 in favor, and 5 opposed — and that, pursuant to the provisions of the Suffolk County Charter, the County Executive has the power to cast and will now cast the deciding vote ”. There followed a colloquy among the Supervisors, ranging from the powers of the. sovereignty to a request for a recess. The chairman, nevertheless, directed the County Executive to cast a vote, whereupon he voted to approve his own appointment and the chairman announced “motion carried”.
At the same meeting Resolution No. 3 creating, -designating and abolishing certain job positions was offered. The vote again was five in favor, four opposed, with petitioner not voting. The chairman again made the same ruling whereupon the County Executive voted yes.
It is alleged in the petition and admitted in the answer that the Board of Supervisors never adopted any rules of order or procedure, and that it w;as customary for Supervisors to abstain from voting and never the custom to record such vote as affirmative or negative.
This proceeding pursuant to article 78 of the Civil Practice Act is brought against Chairmán Leonard and the Clerk of the Board of Supervisors; the Comptroller, Treasurer and Civil Service. Secretary, of the county are also named respondents but have defaulted, Petitioner seeks to annul the ruling" which fashioned his abstention into, a negative vote and permitted the County Executive to cast his vote; and additionally to prohibit the payment of any salary by virtue of the alleged resolutions adopted under such rulings.
*407 The Legislature provides for the organization and government of counties (N. Y. Const., art. IX). The court must look to the Suffolk County Charter which defines the rights and powers of the parties to this proceeding. Its applicable sections provide:
“ § 203. Voting; quorum. Each supervisor shall have one vote. A majority of the whole number of the members of the board shall constitute a quorum. Except as otherwise provided by law, local laws and resolutions shall "be .adopted by a vote of not less than a majority of the total membership of the board. In case of a tie vote on any. matter at any meeting of the board of supervisors the county executive shall have a casting vote, provided, however, that he shall not have a.vote as to any local law or resolution which provides a new form of government, for the county or changes the voting strength of the supervisors, or which changes the location of the county seat ”.
“ § 204. Procedure. * * *
“4. The board of supervisors, by resolution, may establish rules for its own proceedings, including rules for the preparation, posting and distribution of a calendar of matters to be considered at all meetings and notices of all special meetings of,, and public hearings before, the board ”.
“ § 2Ó5. Presiding officer. The board of supervisors shall annually at an organization meeting held as provided by the county law select from its own members a presiding officer who shall preside and act as chairman of all meetings of the board except as herein provided. The county executive shall preside at the organization meeting until the presiding officer has been selected whereupon such newly selected presiding officer shall preside. In the event of a. tie vote for the selection of such presiding officer of the board of supervisors the county executive shall cast the deciding vote ”.
“ § 206. Approval of local laws and resolutions by county executive. No local law or resolution, other than a resolution relating to procedure, shall take effect until it has been submitted to the county executive for his approval.”
“ § 302. Powers and duties. In addition to all. powers conferred by other provisions of this charter, the county executive shall '* * *
“ (3) Except as otherwise provided by law or by this charter, appoint, with the approval of the board of supervisors, the heads of every county department and office and the members of county boards and commissions and appoint, without the approval of the board of supervisors, but within the appropriations therefor, such officers and employees in his own office as may be necessary for the performance of his duties ”.
*408 “ § 1501. Office established; employees. There shall be a county attorney who shall be appointed by the county executive with the approval of the board of supervisors for the term for which the members of the board of supervisors were elected.”
Counsel for the respective parties have been diligent in citing to the court a wealth of conflicting authorities, mostly from foreign jurisdictions. Rather than list the almost 50 decisions which the court has investigated, I will note for purposes of this decision that almost all are collated or adverted to in the following treatises and annotations (Ann. 43 A. L. R. 2d 698; Ann. 40 A. L. R. 808; 2 Dillon, Municipal Corporations, pp. 834-862; 4 McQuillin, Municipal Corporations, pp. 478-506 ; 62 C. J. S., Municipal Corporations, pp. 764-772).
It is apparently the respondent’s view that since the Board of Supervisors failed to adopt any formal rules of procedure, this issue is governed by the English common law. For that purpose he cited, upon oral argument, the so-called Lord Mansfield rule which, I believe, is stated in Rex v. Monday (2 Cowp. 530). Albeit such rule is cloaked in royalty, it merely reflects the accepted parliamentary procedure that when a quorum is present it becomes a self-operating body. It is therefore presumed that any members who are present and refuse to vote assent to the action of the majority. However, it is unnecessary to cross the Atlantic to solve the problems at bar because the Suffolk County Board of Supervisors does not operate on a working quorum principle. Rather, the charter specifically provides that all local laws and resolutions “ shall be adopted by a vote of not less than a majority of the total membership of the board ”, Consequently, if only 6 supervisors are present at any meetings they must act unanimously and the vote of 4 or 5 of the 6 is insufficient. It does not require an extended discussion to illustrate the inapplicability of the so-called Lord Mansfield rule where the Suffolk County Charter requires 6 affirmative votes for action (see People ex rel. Floyd v. Conklin, 7 Hun 188). Further, Chairman Leonard’s ruling, which he based upon “ the rules of laws and reason ”, declared the abstention to be a negative vote.
After examining all the cited opinions it becomes clear they are in hopeless conflict. Each decision rests upon the peculiarities, quorum requirements and verbiage of the municipal charter involved.
There is no New York case precisely in point. However, certain corollary principles are clear: (1) an abstention cannot be counted as a positive vote to fulfill a majority, so that a vote *409 of 17 to 16, 1 supervisor not voting, is not the vote of a majority of the whole number of the Board of Supervisors comprising 34 members (Plantz v. Board of Supervisors of Rensselaer County, 122 Misc. 576); (2) absence from a meeting cannot be declared a negative vote to create a tie, so that a vote of 6 to 4, 2 absent, where 7 votes were the required majority, cannot be declared a tie and enable a mayor to have a casting vote (Matter of Dudley, 33 App. Div. 465); and (3) the right to a casting vote by an executive is strictly construed, especially when he attempts to approve his own appointment (People ex rel. Argus Co. v. Bresler, 70 App. Div. 294, affd. 171 N. Y. 302; Matter of Heafy v. McCabe, 247 App. Div. 277).
Against the background of these principles it would seem that a newly adopted charter would fill the legal void and clearly define voting rights. It does not. For example, in section 203 of the Suffolk County Charter the executive is ostensibly given a casting vote on any but three matters where the Board of Supervisors tie; yet, in section 205 he is specifically given the deciding vote where the board ties in electing a chairman. If section 203 gives the executive a tie-breaking vote in any matter there would be no need for repetition of such power in section 205.
The charter encompasses a scheme of governmental checks and balances whereby the board has ‘‘ approval ’ ’ power over certain of the executive’s appointments, and the executive a limited veto power over the acts of the board. This is not consistent with a right in the executive to partake in the legislative end of the balance to cast his self-approving vote where there is not a tie vote.
The expressed intent of the charter is that the executive never votes on a resolution to change the voting strength of the supervisors, nor should his approval be required on resolutions of procedure. However, acting with the chairman in the case at issue, the vote of the executive indirectly acaomplishes a result contrary to the intent of the charter.
Further, the chairman’s ruling indicates he might well have the power to declare an abstention to be a positive or negative vote. Legislative acts cannot be subject to such whims. If the chairman can control the vote of an abstaining supervisor he can control the vote of an abstaining executive. No such result can be read into the charter. This court is bound to follow the route laid out by the earlier New York decisions. The phrase “ tie vote ” must be given “ common usage ” meaning under this charter. Five votes for, four against, one abstaining, is not *410 a “ tie vote”. Absent a tie the executive has not power to vote — such right cannot spring into being by ad hoc procedural rulings of the chairman. Absence and abstention must be treated alike. It follows that the petition is granted.