242

In the Matter of RALPH MARTINELLI, Doing Business as HOME NEWS AND TIMES, Appellant, *v.* CITY CLERK OF THE CITY OF YONKERS et al., Respondents, and Y R CORPORATION, Doing Business as THE RECORD OF YONKERS, Intervenor-Respondent.

Second Department, April 12, 1971.

*Wekstein & Friedman* (*Morton N. Wekstein* of counsel), for appellant.

*Maurice F. Curran, Corporation Counsel* (*Eugene J. Fox* and *Michael J. Trainor, Jr.,* of counsel), for respondents.

*Adler & Adler* for intervenor-respondent.

SHAPIRO, J. In this proceeding pursuant to article 78 of the CPLR the Special Term denied the petitioner's application to

compel respondents, officials of the City of Yonkers, to recognize his weekly newspaper, the *Home News and Times,* as an official newspaper of the City of Yonkers. He now appeals to this court, contending that he is entitled to such relief because the respondent city officials failed to comply with the requirements of section 43 of the Second Class Cities Law governing the designation of official newspapers by Yonkers.

Section 43 purports to establish the procedures and requirements for designation of official newspapers for cities such as Yonkers in which are published all advertisements and notices required by law to be so published. It provides that at the first meeting of the Common Council for the purpose of organization it shall designate not more than two newspapers published in the city to be its official newspapers. It also allows the Council, by a two-thirds vote of all its members, to designate but one official newspaper. In such case, however, only a daily newspaper may be so designated and, if a decision to designate only one newspaper is made, '' the paper receiving the highest number of votes shall be the official newspaper for two years and until a successor is designated.'' If the Common Council does not avail itself of its limited option to choose one daily newspaper, it must designate two official newspapers. In such case the newspapers must be '' of opposite political faith '' and at least one must be a daily newspaper. The section goes on to provide that '' each member shall be entitled to vote for but one paper, and the two papers having the highest number of votes shall be the official papers for two years and until a successor or successors shall be designated.''

At the organizational meeting of the Council of the City of Yonkers on January 2, 1970, the Mayor asked the Corporation Counsel to render an opinion as to whether the Council must designate two newspapers and, if so, to spell out the appropriate procedure for so doing. The Corporation Counsel stated that, since the *Herald-Statesman* was the only daily newspaper published in Yonkers, it must be one of the designated newspapers. He, therefore, concluded that it was not necessary for the Council to formally vote for the *Herald-Statesman,* as the Second Class Cities Law made it mandatory that at least one of the newspapers be a daily. He ruled, however, that a formal vote was needed to designate the second official newspaper, with each Councilman allowed but one vote. On the roll call vote that followed, *The Record of Yonkers,* a weekly newspaper (the intervenor-respondent), was chosen by a 7 to 6 vote over the petitioner's paper, the *Home News and Times,* also a weekly

newspaper. The appellant and the respondents all concede in their briefs that the petitioner's newspaper was one of the official newspapers of Yonkers in 1968 and 1969, having been so designated on January 2, 1968.

After the respondents and the intervenor-respondent served their answers, the Special Term dismissed the petition on the ground that the Council had satisfied the requirements of section 43, namely, that the two official papers be of opposite political faith and that at least one of them be a daily. On the question of whether Council members had, in effect, cast more than one vote, the Special Term noted that, since there was only one daily published in the City of Yonkers, which daily was concededly a paper of Republican " political faith ", the only action required of the Council was to vote for a weekly paper " of opposite political faith " and that, since the Council had done this, it thereby had satisfied the requirements of the statute.

### THE ISSUE ON THIS APPEAL

The petitioner argues that the method of the Council's choice of the *Herald-Statesman,* the daily, without a vote, was invalid since it was not one of the " two papers having the highest number of votes ". He argues that, since the statute requires that one of the two newspapers chosen be a daily newspaper, this invalidity renders the entire action of the Common Council in choosing official newspapers void and brings into operation the language of section 43 which preserves the previous and concededly valid designation of official newspapers on January 2, 1968 until " successors shall be designated."

Evaluation of this contention requires consideration not only of the specific language used in the statute but, since that language fails to provide a specific answer to the question raised by the petitioner, of the legislative intent made manifest therein. The Legislature obviously intended to insure wide and prompt publication and circulation of statutorily-required public notices. Such notices are intended to alert the general public to proposals pending before city bodies and which will or may have widespread effect on the community and on which it is important that those affected be given an opportunity to make their views known. This is the reason for the mandatory requirement that there be two official newspapers " of opposite political faith ", unless the Council, by a two-thirds vote of all its members, vote for one newspaper — a daily. Hence, also the requirement that if two newspapers are designated at least one of them has to be a daily, quite apparently for the purpose of assuring speedy and frequent notice to a broad spectrum of the public. The pro-

vision that each member is entitled to vote for but one paper is a reflection of the legislative desire to insure compliance with the requirement that the papers be " of opposite political faith " by securing for the minority a controlling voice in the choice of the second paper (*People ex rel. Argus Co.* v. *Bresler,* 171 N. Y. 302). The importance the Legislature attached to making such a machinery for widespread bipartisan notice available as quickly and as frequently as possible is emphasized by the requirement in the opening sentence of the section that the two official newspapers be designated at the first meeting of the Common Council, its organizational meeting.

There would be no problem if there were two or more daily newspapers of opposite political faiths published in Yonkers, for, if there were, the Council would have had to take an actual vote on which one, or whether both, should be designated and the majority would have been able to choose one of them which supported its party's views, with the minority choosing the other or choosing a weekly which supported its party's views. But in Yonkers there is only the one daily newspaper and it supports one party. Neither political party controls two thirds of the seats in the Council, which would effectively permit it to limit the official newspaper to the existing daily. Nothing in the statute specifically provides for such a situation. The recognition of this fact apparently caused the Corporation Counsel to give the advice he did, which was calculated to achieve the goal of securing the difference in political faith sought by the Legislature. Whether his advice that there need be no vote on the daily newspaper was correct is not the determining factor here but rather whether the result reached by the Council is consistent with the goal of section 43. Both of the weeklies considered for designation as the second official newspaper are concededly of an " opposite political faith " to the daily newspaper. Hence, by the actions taken by the Council, the legislative goal of political diversity was achieved while the requirement that one of the two papers be a daily was also met.

The provision in the statute that each member shall be entitled to vote for but one paper is not a goal in itself but solely a device aimed at securing the minority party a voice in selection of one of the two official newspapers. Where, as here, the statute's limitation that each member may vote for but one newspaper would result in noncompliance with other requirements of the statute, it may be disregarded in order to give workable effect to the statute (cf. *Gusthal* v. *Strong,* 23 App. Div. 315; *Matter of Deuel,* 116 App. Div. 512; *Matter of Stockwell,* 210 App. Div.

753; *Huss* v. *Huss,* 15 A D 2d 941). Here, as the Special Term noted, to have required a vote on the *Herald-Statesman,* which under the statute had to be designated as one of the two official newspapers, might have resulted in no daily newspaper being selected or the selection of two weekly official newspapers of the same political faith, a situation which the underlying purpose of the statute was designed to prevent.

I conclude, therefore, that the action of the Council was not invalid and that the judgment appealed from should be affirmed, with costs.

MUNDER, Acting P. J. (dissenting). I dissent and vote to reverse the judgment and to remit the proceeding to the Special Term for a determination consistent with the views expressed herein.

I do not agree with the way the majority applies section 43 of the Second Class Cities Law to the facts of this case. Section 43 provides that unless the Common Council, by a two-thirds vote, determines to designate only one official paper, it '' shall designate two official papers, of opposite political faith, and of which at least one shall be a daily newspaper, and *each member shall be entitled to vote for but one paper, and the two papers having the highest number of votes shall be the official papers for two years and until a successor or successors shall be be designated* '' (emphasis mine).

The Yonkers Common Council, at its organizational meeting in January, 1968, designated the petitioner's paper, the *Home News and Times,* a weekly, and the *Herald-Statesman* as the city's official newspapers. Two years later, at its organizational meeting in January, 1970, upon advice from the Corporation Counsel, the Common Council redesignated the *Herald-Statesman* as one of the two official papers without casting any votes for it. I believe that such action ignores section 43, which states that the two papers '' having the highest number of votes '' shall be the official papers.

The reason given for not voting for the *Herald-Statesman* was that it was the *only* daily paper in the city and that, since one of the two official papers must be a daily, it would be '' useless '' for the Council members to formally vote for it. I cannot agree.

The intent of the statute is clearly to have each Council member vote for one paper. This, as was noted almost 70 years ago in *People ex rel. Argus Co. v. Bresler* (171 N. Y. 302, 309), is to provide for the selection of an official newspaper by a minority of the Council. Here the minority had no voice in the selection. I am sure the Legislature was aware that many cities throughout

the State, like Yonkers, might have only one daily newspaper. I see nothing in section 43 to suggest that in such a case the wording of the statute was to be ignored.

As I read it, section 43 requires the Council members to designate their papers by formal vote. If, after voting, the statute is not satisfied, i.e., one of the two papers receiving the highest number of votes is not a daily, then another vote must be taken. This is precisely how the minority's voice is protected. If the Council members are adamant and refuse to change their votes to satisfy the statute, then no valid new designation is made and the newspapers designated at the prior organizational meeting continue as the official papers.

At bar, the designation was void because it failed to follow section 43. Accordingly, the papers designated in 1968, namely, the *Home News and Times* and the *Herald-Statesman,* are the official papers and continue as such " until a successor or successors shall be designated ".

GULOTTA, CHRIST and BENJAMIN, JJ., concur with SHAPIRO, J.; MUNDER, Acting P. J., dissents and votes to reverse the judgment and to remit the proceeding to the Special Term for a determination consistent with the views expressed in his dissenting opinion.

Judgment affirmed, with costs.