Gibson, J.
 

 The issue is one of statutory construction and it arises from the disputed designation of two official newspapers by the Common Council of the City of Yonkers at its 1970
 
 *276
 
 organizational meeting. Involved were three newspapers: petitioner’s
 
 Home News and Times,
 
 intervenor’s
 
 The Record of Yonkers,
 
 both of which were Democratic weeklies, and the
 
 Herald-Statesman,
 
 which was Republican and the city’s only daily.
 

 The governing statute is section 43 of the Second Class Cities Law which, in pertinent part, provides that “ [a]t the first meeting of the common council for the purpose of organization, as provided herein, it shall designate not more than two newspapers published in the city to be the official paper or papers of the city” and, further, that “ [ujnless the common council shall * * * determine to designate but one official paper, it shall designate two official papers, of opposite political faith, and of which at least one shall be a daily newspaper, and each member shall be entitled to vote for but one paper, and the two papers having the highest number of votes shall be the official papers for two years and until a successor or successors shall be designated.”
 

 Apparently because the
 
 Herald-Statesman
 
 was the only daily, the mayor sought an opinion as to voting procedure and the corporation counsel advised the Council as follows: “it is not necessary for the Council to formally vote for the Herald-Statesman, as it is an official newspaper by virtue of the Second Class Cities Law. However, in order to designate a second newspaper, a formal vote would have to be taken by the Council, with each Councilman allowed but one choice. ’ ’ The Council minutes, after referring to ‘‘ this ruling ’ ’, state that a ‘ ‘ vote was taken for the second newspaper”, all 13 members
 
 *
 
 voting and the vote being recorded as for
 
 The Record of Yonkers,
 
 seven votes, and for the
 
 Home News and Times,
 
 six votes, and the minutes conclude with the statement that the mayor thereupon “ announced the Official Newspapers * * * as designated by the City Council, to be: The Herald-Statesman — and The Yonkers Record".
 

 From this, it is evident that (1) the Republican daily, receiving no votes at all, was not one of “ the two papers having the highest number of votes ”, as required by section 43; unless (2) it be
 
 *277
 
 inferable from the minutes quoted that the intent was to east a sufficient number of votes to designate the Republican daily, in which case it is obvious that the votes necessary to give the
 
 Herald-Statesman
 
 the highest or next highest number of votes were cast a second time, for one or the other of the two weeklies. Thus, the roll call showed that all 13 councilmen voted for the two weeklies; the second votes thus cast being, as appellant contends, in violation of the provision of section 43 that “ each member shall be entitled to vote for but one paper ’ ’. The actual vote for the weeklies being seven to six, it is evident that the nine Democrats split and that the four Republicans may have furnished the votes necessary to select one Democratic paper as against the other.
 

 It is clear that, in order to effect the
 
 Herald-Statesman’s
 
 appointment, the appointing authority, the Council, was obliged to take some affirmative action to that end, so as to accomplish at least substantial compliance with the statutory requirements that it
 
 “
 
 shall designate ” two papers and that the two having the highest number of votes ‘ ‘ shall be ’ ’ the designees. It is not enough to infer tacit approval of the corporation counsel’s opinion, and of the mayor’s announcement. Neither can it be considered that the designation of the
 
 Herald-Statesman
 
 involved a purely ministerial act; because in every case some element of voting discretion is involved, if only to determine—inasmuch as the statute prescribes no other test—whether a particular newspaper is, in fact, what it professes to be, in this case a Republican daily. Recognizing, then, that at least one vote had to be cast for the
 
 Herald-Statesman
 
 and assuming that one vote would have been sufficient to designate (upon eliminating the third contender—the Democratic weekly having the second lowest number of votes), it would follow that that one vote could not be cast a second time, and, of course, appellant lost by one vote.
 

 At the Appellate Division, it was said that
 
 “
 
 by the actions taken by the Council, the legislative goal of political diversity was achieved while the requirement that one of the two papers be a daily was also met ” (36 A D 2d 242, 245). This conclusion, however, seems to overlook a third factor, implicit in the statute, and that is, the intent that the designation of a paper claiming adherence to a particular party be determined by the councilmen
 
 *278
 
 who are members of that party. In this case, Republican votes may well have constituted the margin whereby one Democratic paper was preferred above the other.
 

 In sum, we find in the statute no ambiguity such as to require judicial construction or to warrant the departure taken by the courts below from its explicit terms. In doubtful cases, often the better course is to require literal compliance with a statute of this nature, even at the cost of an occasional stalemate, which, after all, was contemplated by the holdover provision contained in section 43 and would not be catastrophic in any event. In this case, the designation in dispute did not involve a minority but was to be made by the majority, which, however, chose to split; but it is helpful, nevertheless, to consider the sound dictum in
 
 People ex rel. Argus Co.
 
 v.
 
 Bresler
 
 (171 N. Y. 302, 308), an old but nonetheless respectable authority, which appraised the statute in this fashion: “ It is the expression of a legislative intent to provide for the selection of an official newspaper by a minority of the common council and, for the effectuation of such a purpose, each alderman was permitted to vote for only one paper.”
 

 The order of the Appellate Division should be reversed, with costs, and the matter remitted to Special Term for further proceedings in accordance with this opinion.
 

 Chief Judge Fuld and Judges Burke, Scileppi, Bergan, Breitel and Jasen concur.
 

 Order reversed, with costs against the respondents and the matter remitted to Special Term for further proceedings in accordance with the opinion herein.
 

 *
 

 We are told that the membership consisted of nine Democrats and four Republicans.