ROBERT G. HOUSER, APPELLANT, V. SCHOOL DISTRICT OF SOUTH SIOUX CITY, DAKOTA COUNTY, STATE OF NEBRASKA, ALSO KNOWN AS SOUTH SIOUX CITY COMMUNITY SCHOOLS, SOUTH SIOUX CITY, NEBRASKA, APPELLEE.

202 N. W. 2d 621

Filed December 1, 1972. No. 38454.

Crosby, Pansing, Guenzel & Binning and Steven G. Seglin, for appellant.

Smith, Smith & Boyd, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

SPENCER, J.

Plaintiff-appellant instituted this declaratory judgment action seeking an interpretation and construction of section 79-1254, R. R. S. 1943 (Reissue 1966). What

interpretation is to be placed upon the words "majority of the members of the board?" Does it mean a majority of a legally constituted and acting quorum of said board, or does it mean a majority of all the members elected to said board? Also involved is whether plaintiff waived his right to question the validity of the board's vote to terminate his teaching contract by requesting a hearing pursuant to section 79-1254, R. R. S. 1943.

Plaintiff was a football coach and school teacher employed by the school district of South Sioux City, Nebraska, a Class III district. The school board, hereinafter referred to as board, is composed of six members. On March 17, 1971, the board held a special meeting with five members present. At that meeting, by a three to two vote, the board terminated plaintiff's contract at the end of the 1970-71 school term, pursuant to section 79-1254, R. R. S. 1943. On March 22, 1971, the secretary sent plaintiff a letter informing him that he would not be rehired for the following school year. The letter did not disclose the vote nor the date when the vote was taken. The plaintiff wrote the school superintendent, requesting a hearing. The board in reply informed plaintiff by letter dated April 1, 1971, that a hearing was scheduled for April 8, 1971.

On or about April 5, 1971, plaintiff discovered that the vote taken by the board on March 17, 1971, was three in favor and two against termination. He appeared with counsel at the April 8 meeting. Plaintiff's counsel informed the board that plaintiff would take no part in any hearing since the board had not legally terminated his contract prior to April 1, as required by law. Plaintiff then tendered a letter to the secretary accepting his contract for the 1971-72 school term, pursuant to section 79-1254, R. R. S. 1943. The board then voted four to two to reaffirm the action taken March 17, 1971.

Section 79-439, R. R. S. 1943, reads as follows: "In all meetings of any school board, or board of education,

a majority of the members shall constitute a quorum for the transaction of business. Regular meetings shall be held on the first Monday of every month. Special meetings may be called by the president or any two members, but all members shall have notice of the time and place of meeting; Provided, the provisions of sections 79-439 to 79-444 shall not apply to Class V districts."

Section 79-1254, R. R. S. 1943, before the 1971 amendment, which is not material on the issue herein, provided: "The original contract of employment with a superintendent or a teacher and a school board or board of education of a Class I, II, III, or VI district shall require the sanction of a majority of the members of the board. Any contract of employment between a teacher who holds a certificate which is valid for a term of more than one year and a Class I, II, III, or VI district shall be deemed renewed and shall remain in full force and effect until a majority of the members of the board vote on or before April 1 to amend or to terminate the contract at the close of the contract period; Provided, that the secretary of the board shall, not later than April 15, notify each teacher in writing of any amendments to his contract or the termination of his contract; and provided further, that a teacher whose contract is terminated shall have the right to file a written request with the board of education for a hearing before the board. Such request shall be filed within fifteen days after receipt of the notice of termination and such request shall be granted by the school board or board of education. After such hearing a written statement as to the termination shall be given if requested by the teacher. Any superintendent or teacher whose contract is amended or automatically renewed according to the provisions of this section shall file written notice with the secretary of the board within fifteen days after receiving such notice of his acceptance of the amendments to or renewal of such contract, and failure to file such notice shall be regarded as conclusive evi-

dence of his nonacceptance of the amendments to or renewal of his contract. No member of the school board or board of education may cast a vote in favor of the election of any teacher when such member of the board is related by blood or marriage to such teacher."

Plaintiff concedes that the common law rule, in the absence of a contrary statutory provision, applies: A majority of a quorum which constitutes a simple majority of a collective body may act for that body. Federal Trade Commission v. Flotill Products, Inc. (1967), 389 U. S. 179, 88 S. Ct. 401, 19 L. Ed. 2d 398. It is plaintiff's contention that section 79-1254, R. R. S. 1943, is a contrary statutory provision.

Section 79-439, R. R. S. 1943, is a general statute dealing with the transactions of school business. Section 79-1254, R. R. S. 1943, contains special provisions specifically applicable to voting on teachers in Class I, II, III, and VI districts. Special provisions of a statute in regard to a particular subject will prevail over general provisions in the same or other statutes so far as there is a conflict. In the early case of Albertson v. State (1879), 9 Neb. 429, 2 N. W. 742, Chief Justice Maxwell, writing for the court, held: "Special provisions of a statute in regard to a particular subject will prevail over general provisions in the same or other statutes, so far as there is a conflict."

The board argues a "majority of the members of the board" means a majority of a quorum, and not all the members of the board. It insists if the Legislature had intended otherwise, it would have said a majority of all members. In section 79-439, R. R. S. 1943, where there is no question a majority of all members is necessary to constitute a quorum, the language used is a "majority of the members."

It is true, in sections governing Class IV and V schools, the word "all" is used. Section 79-525, R. R. S. 1943, for a Class IV district, has the following: "The election of all officers of the board, principals, teachers, and

regular janitors, and all elections for filling vacancies on the board, shall be by ballot. No person shall be declared elected unless he receives the vote of a majority of *all* the members of the board." (Italics supplied.)

The provision in section 79-1004, R. R. S. 1943, covering Class V schools, reads: "The election of such officers of the board, teachers, and janitors shall be by ballot and no person shall be declared elected unless he receives a vote of a majority of *all* the members of the board." (Italics supplied.)

Section 6589, Compiled Statutes, 1922, covering cities over 1,000 population, had the following language: "The election of the officers of the board, of the superintendent and teachers, and all elections for filling vacancies on the board shall be by ballot, and no person shall be declared elected except he receive the vote of a majority of *all* the members of the board." (Italics supplied.) This exact language had been carried in the statute since it came into the law in 1881.

The present language came into the law in 1937. (Section 4 of LB 212, Laws 1937, c. 182, p. 716.) The pertinent portion reads as follows: "The election of the officers of the board, and all elections for filling vacancies on the board shall be by ballot, and no person shall be declared elected except he receive the vote of a majority of all the members of the board. The original contract of employment with a superintendent or a teacher shall require the sanction of a majority of the members of the board, but thereafter said contract shall be deemed renewed and shall remain in full force and effect until a majority of the members of the board vote on or before April first to terminate the contract at the close of the contract period, * * *."

When the law was revised in 1949, the provisions for board members were put in other sections, and the language "the original contract of employment with a superintendent or a teacher shall require the sanc-

tion of a majority of the members of the board," became part of the opening sentence in new section 79-1254, R. S. Supp., 1949. This would appear to give substance to the board's argument. We see no distinction between the phrasing "a majority of all members," and "a majority of members." We do not believe that the Legislature intended to treat the teachers in Class I, II, III, or VI districts different than those in Classes IV and V. If a different result were intended, it would have been very easy to have clarified the language to so indicate. The language used indicates to us the intention to require a majority of all members of the board, and not a majority of the quorum.

Board's final contention is that the plaintiff is estopped from asserting the invalidity of his termination because he requested a hearing pursuant to section 79-1254, R. R. S. 1943. Board argues that if it had known the nature of plaintiff's objections before the April 1 deadline, a full board would have voted in favor of the termination by a four to two vote. Be that as it may, the termination of plaintiff's contract required the concurrence of a majority of the full board. We assume that the board is attempting to raise an issue of waiver or estoppel, neither of which can be sustained on the facts herein. The trial court made no finding on this issue. Plaintiff did not know the nature of the vote at the March 17 meeting until April 5, and acted immediately. Plaintiff, who had a right to assume the board was acting legally, was notified of the board action by letter dated March 22, 1971. He immediately requested a hearing to determine the reason for his termination. As soon as he learned he had not been validly terminated, he promptly advised the board to that effect. There is no waiver nor estoppel present herein.

For the reasons given, the judgment is reversed and the cause remanded for further proceedings to determine and assess plaintiff's damages herein.

REVERSED AND REMANDED.