EUGENE A. ENGEL AND MARJORIE L. ENGEL, HUSBAND
AND WIFE, APPELLANTS, V. RHEN MARSHALL, INC.,
A NEBRASKA CORPORATION, APPELLEE.

292 N. W. 2d 307

Filed May 13, 1980. No. 42858.

Christensen Law Offices, P. C., for appellants.

Hubka, Kraviec & Thompson, for appellee.

Heard before KRIVOSHA, C. J., BRODKEY, WHITE, and HASTINGS, JJ., and CAPORALE, District Judge.

HASTINGS, J.

Plaintiffs filed this action on August 15, 1978, to enjoin the defendant from continuing to allow the dis-

charge or overflow of water and sewage effluent from defendant's sewage lagoon onto the plaintiffs' land. The defendant's theory of the case was that it had acquired a prescriptive easement over the plaintiffs' land. The trial court agreed with the defendant and, on that basis, denied the request for injunctive relief. Plaintiffs have appealed and their assignments of error generally attack the finding of a prescriptive easement. Additionally, plaintiffs complain that the trial court denied their motion to file an amended petition alleging a second cause of action covering their alleged money damages, made after the parties had rested and the case was submitted. We reverse as to the injunctive relief but affirm as to the amended petition.

It is the duty of this court on appeal of an action in equity to try the issues de novo and to reach an independent conclusion without being influenced by the findings of the trial court except to give weight to the fact that the trial court saw the witnesses and observed their demeanor while testifying, that it inspected the premises, and that its examination constituted evidence tending to influence belief or unbelief on the matters at issue in the case. *Keim v. Downing,* 157 Neb. 481, 59 N.W.2d 602 (1953). In order to acquire an easement by prescription, the use and enjoyment by the one making such claim must be adverse, under a claim of right, continuous and uninterrupted, open and notorious, exclusive, with the knowledge and acquiescence of the owner of the servient tenement, all continuing for the full prescriptive period of 10 years. *Jurgensen v. Ainscow,* 155 Neb. 701, 53 N.W.2d 196 (1952).

The plaintiffs, more particularly Marjorie L. Engel, are and, since the 19th day of May 1966, have been the owners of the southwest quarter of Section 3, Township 4 North, Range 6 East of the 6th P. M., Gage County, Nebraska, except the east 600 feet of the west 660 feet of the north 600 feet thereof, which

has been owned by the defendant since April 26, 1965. The west 60 feet is apparently used for public highway purposes. Both conveyances came from a common grantor, Mrs. Engel's father. The plaintiffs make their home on and farm their land; the defendant operates a truck stop and cafe on its premises. The defendant's property is located on the high portion of the quarter section and the natural drainage runs from there diagonally to the southeast across plaintiffs' property.

According to the testimony of Mr. Engel, he was aware of the purchase of the land by the defendant, its use as a truck stop, and the construction of the sewage lagoon. He was aware of overflow and run-off from the lagoon, but it was not all that noticeable nor did it become a problem until about 1974 or 1975. It was not until then that there was ever any running water in the natural drainway other than after a rain. At the time Mr. Engel first noticed a change in the water situation on his property, he discovered that his land along the drainway was always wet with a green colored water which looked like sewage. This was beginning to interfere with the cultivation and productivity of his land. He walked up the drainway and found that the water was coming out of the sewage lagoon. He discovered a draw-down pipe in the lagoon with the cap removed and laying on the ground which was the source of the overflow. He notified Rhen Marshall, defendant's president, who told him that he was having a problem with the lagoon and he would correct it. According to Mr. Engel, the problem was corrected right away. However, as Mr. Engel stated, the flow of water would stop for a short time and then commence again. Each time he would call this to the defendant's attention and again it would be corrected at once. He thought he had complained to the Marshalls 20 or 30 times during the last 4 or 5 years, always with the same result. The last time Mr. Engel

approached the defendant about the overflow problem was during the year 1978, at which time, for the first time, Mr. Marshall told him he didn't think he was required to stop the flow. On cross-examination, Mr. Engel acknowledged that there could have been some water in the drainageway prior to 1974. "It would come at times, but then I - I wasn't looking for any problem. We'd always gotten along real well with Mr. Marshall earlier and that was no reason to suspect anything was wrong." Again, "Whenever I complained earlier he would always said [sic] he'd correct the problem and he always correct [sic] it, yes."

The defendant's version of the problem, expressed through the testimony of Rhen Marshall, didn't vary from that of the plaintiffs in most respects. He did say that the lagoon was constructed in 1965 according to plans approved by the State of Nebraska and was designed so as to overflow from time to time. He claimed that it overflowed on a continuous basis for the first 5 or 6 years, after which he installed a pipe and plug which would stop the overflow so that Mr. Engel could plow a little better. He denied that he did this at Mr. Engel's request, but rather " 'cause he's a neighbor." However, he did admit that he had inserted the plug from time to time after having been asked by Mr. Engel: "Oh, occasionally if I'd miss it, he's come tell me." On cross-examination, Mr. Marshall was asked, "Now . . . during the last four or five years . . . Mr. Engel has repeatedly come over and asked you to stop running water . . . onto his land . . .?" to which he replied "Yes." The defendant's president also admitted that, after this particular action was filed, he quit complying with the plaintiffs' requests.

As we have previously pointed out, Mr. Engel admitted that it was 4 or 5 years previous to May 1979 that he noticed water continuously draining onto his premises. He agreed that there might have been

times before 1974 when there would be occasional water, but he quite apparently had no knowledge then of any use by the defendant that was causing him any serious problems. Knowledge of a condition, it would seem, is necessary before it can be said that one had acquiesced in its continuation. "Acquiescence on the part of the owner which is necessary to acquisition of a prescriptive easement means passive assent or submission, quiescence, consent by silence." *Jurgensen v. Ainscow,* at 709-10, 53 N.W.2d at 201.

With the apparent exceptions beginning immediately after this lawsuit was filed in 1978, on every occasion, 20 or 30 times in number, whenever the plaintiffs asked the defendant to discontinue running overflow water on their land, the defendant complied with these requests. Such compliance on the part of the defendant was consistent with a permissive use by it of the drainway across plaintiffs' property and wholly inconsistent with any recognition on the part of the plaintiffs of any authority in the defendant to demand the same as a matter of right. The mere fact that the plaintiffs "asked" the defendant to quit running overflow water on their premises only on the occasions when the damage was real and obvious, and tolerated such action on other occasions in the spirit of neighborliness, should not now permit the defendant to claim that its use of the drainageway was at all times hostile and adverse. There is nothing in the law which requires one to act in a beastly manner towards a trespasser in insisting upon one's lawful rights. It seems apparent to us that each time the defendant complied with the plaintiffs' request and discontinued the flowage of water onto the latter's property, this interrupted the otherwise continuous nature of defendant's use.

"A prescriptive right is not looked on with favor by the law and it is essential that all the elements of use and enjoyment necessary to give title to real es-

tate concur in order to create an easement by prescription." *Kuhlmann v. Platte Valley Irr. Dist.,* 166 Neb. 493, 512, 89 N.W.2d 768, 780 (1958). The burden which the defendant had to establish the elements of adverseness, continuousness, hostility, and acquiescence has not been met. We arrive at this conclusion after a de novo review of the record, bearing in mind that the trial judge viewed the premises, but also recognizing that what he could see established only the present condition of the premises and in no way could have been useful in determining the existence of the previously mentioned elements of adverse possession.

As to the issue regarding amendment of the plaintiffs' petition, the case cited in their brief fully answers that question. "[A]mendments may be allowed after the evidence is closed." *Swan v. Bowker,* 135 Neb. 405, 412, 281 N.W. 891, 895 (1938). No evidence of dollar values was offered by the plaintiffs in support of the figures contained in the proffered amended petition. Therefore, no opportunity was ever afforded to the defendant to refute the same at that stage of the proceedings. The trial court did not abuse its discretion in denying the request, and its action in that regard is affirmed.

The judgment is reversed and the cause remanded, with directions to issue a permanent injunction in favor of the plaintiffs.

AFFIRMED IN PART, AND IN PART
REVERSED AND REMANDED WITH
DIRECTIONS.