NEMAHA NATURAL RESOURCES DISTRICT, APPELLEE, V.
ELMER NEEMAN, ALVIN PETERSON, AND
WALTER REIMER, TRUSTEES, APPELLANTS.

315 N.W.2d 619

Filed January 29, 1982. No. 43480.

Wellensiek & Rehmeier for appellants.

Steven G. Seglin of Crosby, Guenzel, Davis, Kessner & Kuester for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

BRODKEY, J.

This is an equitable action brought by the Nemaha Natural Resources District (Nemaha), a political subdivision of the state, against Elmer Neeman, Alvin Peterson, and Walter Reimer, seeking the return of certain real and personal property conveyed to them on June 30, 1972, by the Otoe Soil and Water Conserva-

tion District (Otoe). Following a trial on December 10, 11, and 21, 1979, the District Court of Otoe County, Nebraska, entered a judgment in favor of the plaintiff, quieting title to the real property in Nemaha and finding that the personal property was the property of the natural resources district. We affirm.

The facts relevant to this case involve the Nebraska natural resources district act, Neb. Rev. Stat. §§ 2-3201 et seq. (Reissue 1977), and the antecedent Soil Conservation Districts Law, Comp. Stat. §§ 2-1901 et seq. (Supp. 1937). In 1937 the Nebraska Legislature enacted the Soil Conservation Districts Law under which conservation districts were created for the purpose of conserving soil resources by controlling and preventing soil erosion through uniform land-use programs. On April 15, 1941, the Otoe Soil Conservation District filed an application for organization with the Secretary of State in accordance with §§ 2-1901 et seq. The Otoe district was subsequently organized, with its principal office in Syracuse, Nebraska, and was governed by a five-member board of supervisors. In 1957 the name of the Otoe Soil Conservation District was changed to the Otoe Soil and Water Conservation District, pursuant to Neb. Rev. Stat. § 2-1549 (Reissue 1970).

The natural resources district act, originally enacted in 1969, provided that the original soil and water conservation districts should be consolidated and made functions of natural resources districts before July 1, 1972; and § 2-3206 of that act further provided that each natural resources district established pursuant to the act "shall assume, on July 1, 1972, all assets, liabilities, and obligations of any soil and water conservation district . . . whose territory is included within the boundaries of such natural resources district." That section also provided that when the jurisdiction of any soil and water conservation district, etc., is included within two or more natural resources districts, "the commission shall determine the apportionment of any assets, liabilities, and obligations. Such ap-

portionment shall be based on the proportionate land area included in each district. Physical assets attached to the land shall be assumed by the district in which they are located."

It appears that until 1969, conservation districts did not have statutory authority to borrow money. There is evidence in the record, however, that as early as 1945 Otoe borrowed money to purchase equipment for conservation projects. There is in the record, however, testimony of various members of the Otoe board of supervisors that it was their practice to borrow money from banks to obtain funds for the purchase of various real and personal property used by the district. There is testimony from some of the supervisors that the money was borrowed by them individually by signing notes at the bank; however, there is also evidence in the record from which a conclusion can be reached that the bank or banks were actually making the loan or loans to the district itself, although such loans were made upon the signatures of the individual supervisors. The loan instruments themselves were not introduced in evidence and are not included in the record, and it is impossible to state with certainty whether the individuals were in effect signing as guarantors of the loan to the district. It is clear, however, that none of the supervisors were ever required personally to make any payments upon the loans obtained by them from the bank; but, on the contrary, the record reveals that the loans were repaid by checks drawn on the Otoe district with funds obtained from the performance of soil conservation services on which the equipment purchased was used.

The real estate involved in this litigation consists of Lots 4, 5, 6, 7, 8, and 9, Block 8, Thorn's Addition to the City of Syracuse, Otoe County, Nebraska. The property was purchased in 1946, and by the mid-1960s an office building was built on the property at a cost of approximately $20,000. The U.S. Department of Agriculture Soil Conservation Service occupies the property

as tenant. The personal property subject to this action includes a dry photocopier, movie projector and screen, measuring wheels, 22-foot fiberglass rods, Rolla-Flex card index file, camera, duplicator, fiberglass tanks with saddles, sheepsfoot roller, three-ton four-wheel trailer, one-ton truck with mounted sprayer and motor and tank, two-wheel sprayer, tree planter, and a humidifier.

After the enactment of the natural resources district act in 1969, the Otoe Soil and Water Conservation District was included within the boundaries of both the Nemaha Natural Resources District and the Lower Platte South Natural Resources District. The evidence in the record indicates that 91 percent of Otoe was assumed by Nemaha, while 9 percent, or 56 square miles, was within the Lower Platte South boundary.

The record reveals that at approximately 10:30 p.m. on June 30, 1972, the evening prior to the statutory merger of Otoe with the Nemaha and Lower Platte South Natural Resources Districts, three members of the Otoe board of supervisors met and conveyed the above-described property to the defendants as trustees. A copy of the trust agreement executed that evening provides in pertinent part:

"WHEREAS when the above described real estate and personal property was purchased title was taken in the name of OTOE SOIL CONSERVATION DISTRICT AND Otoe Soil Conservation District has been holding said property in trust for the benefit of the citizens in Otoe County, Nebraska, interested in soil and water conservation, and

"WHEREAS, the Otoe Soil Conservation District is being dissolved by operation of law and the Nemaha Natural Resources District is being created as a successor and includes the area encompassed in the Otoe Soil Conservation District, and

"WHEREAS, the Otoe Soil Conservation District has been holding title to said property in trust for the benefits of the individuals and residents of Otoe County,

Nebraska, who are interested in soil and water conservation in Otoe County, Nebraska, and it is the desire to place said title in trust for the benefit of soil and water conservation in Otoe County, Nebraska.

"NOW THEREFORE, in consideration of the mutual promises, the Otoe Soil Conservation District in consideration of the premises hereby conveys and transfers the above-described real estate and personal property to Elmer Neeman, Alvin Peterson, and Walter Reimers, in trust, to be held and applied for the promotion of the soil and water conservation in Otoe County, Nebraska, to be known as the 'Otoe County Conservation Trust' . . . ."

The record further discloses that the Otoe board of supervisors met again on July 3, 1972, 3 days after the statutory merger of Otoe with the natural resources districts, and at which time the conservation district was no longer in existence. The minutes of that meeting reveal that all five members of the board were present and voted to approve the minutes of the June 30, 1972, meeting. The deed to the real estate was not filed by the defendants until April 29, 1974. The Nemaha and Lower Platte South Natural Resources Districts filed an assumption affidavit with the register of deeds of Otoe County on October 5, 1972, in order to perfect their claim to the assets assumed from Otoe effective July 1, 1972.

Don Hood, who became manager of Nemaha in 1976, testified that he reviewed the minutes of the natural resources district and determined that Nemaha was not apprised of the fact that it had not assumed the assets of Otoe until January 16, 1975. In August of 1976 Hood met with the defendants and requested a transfer of the assets to Nemaha. At that time the defendants transferred certain items of personal property, to wit: the one-ton truck, two-wheel sprayer, tree planter, and a camera. They refused, however, to transfer the real estate or the balance of the personal property. Thereafter, the board of directors of Nemaha authorized

Hood to seek legal assistance and take the steps necessary to resolve the matter.

On August 23, 1977, Nemaha filed its petition with the Otoe County District Court; however, service on the defendants was not obtained until March 8, 1978. The plaintiff's second amended petition alleged four causes of action: (1) A quiet title action seeking the removal of a cloud cast upon title to the real property alleged to be vested in Nemaha; (2) An action for conversion seeking the return of certain personal property; (3) An action for the imposition of a constructive trust on real property wrongfully conveyed to the defendants; and (4) An action for the imposition of a constructive trust on personal property wrongfully held by the defendants.

On May 16, 1979, the Lower Platte South Natural Resources District executed an assignment to Nemaha of its interest in the real and personal property, and also its interest in the litigation.

In their answer and cross-petition, filed on June 25, 1979, the defendants alleged that Nemaha's second amended petition failed to state a cause of action; that· the action was barred by a 4-year statute of limitations; that the Nemaha district had no authority to bring the action; that there was a defect of parties plaintiff in that the Lower Platte South district was not joined in the action; that the Otoe district was a private entity and that Nemaha had no claim to the property by virtue of a statutory merger of Otoe into the Nemaha district; and that the statutes authorizing the natural resources districts are unconstitutional in that they cause unequal taxation within the districts.

This matter came on for trial on December 10, 11, and 21, 1979. In its memorandum opinion filed on February 26, 1980, the trial court determined that the statute of limitations had not run against the claim of Nemaha; that the Lower Platte South district was not a necessary party to the action since it had assigned its interest in the action to Nemaha; that the action of the two supervisors of Otoe in voting to transfer the real

and personal property of the district to the defendants was void, as it was beyond the power of the supervisors to transfer title to property owned by a governmental subdivision to a private entity; that there was not a concurrence of the majority of supervisors to such transfer of assets; and that there was no consideration for the transfer of the property.

The defendants have appealed from the judgment of the District Court, and in their brief on appeal assign the following errors: (1) The trial court erred in ruling that the statute of limitations did not bar the causes of action and that there was no defect of parties plaintiff; (2) The court erred in finding that plaintiff has been acting as a tenant of the trustees; (3) The court erred in failing to find that the Otoe district was a private entity doing business under the firm name of Otoe Soil Conservation District rather than a political subdivision of the state; (4) The court erred in finding Neb. Rev. Stat. § 2-1519 (Reissue 1974) required a concurrence of a majority of all the members of the Otoe board of supervisors; (5) The court erred in finding that the action of only two supervisors in voting to transfer the assets of Otoe was void; (6) The court erred in finding that the subsequent meeting of the Otoe board of supervisors on July 3, 1972, purporting to approve the minutes of the June 30, 1972, meeting was void; (7) The court erred in finding that there was no consideration for the transfer of the property; (8) The court erred in refusing evidence offered for the purpose of providing unconstitutional taxation by the plaintiff; and (9) The court erred in overruling the motion for new trial.

To begin our discussion of the law applicable to the instant case, we note that the standard of review by this court in equity cases is well established. "Actions in equity on appeal to this court are triable de novo, subject, however, to the rule that when credible evidence on material questions of fact is in irreconcilable conflict, this court will, in determining the weight of the evidence, consider the fact that the trial court observed

the witnesses and their manner of testifying, and must have accepted one version of the facts rather than the opposite." *State v. Jones*, 202 Neb. 488, 493, 275 N.W.2d 851, 854 (1979). See, also, *Botsch v. Leigh Land Co.*, 205 Neb. 401, 288 N.W.2d 31 (1980); *Engel v. Rhen Marshall, Inc.*, 206 Neb. 265, 292 N.W.2d 307 (1980); *Sullivan v. Hoffman*, 207 Neb. 166, 296 N.W.2d 707 (1980).

We reject as fallacious defendants' contention that the Otoe Soil Conservation District existed as a private entity rather than a political subdivision of the State of Nebraska prior to the formation of the natural resources districts in 1972. As we have discussed above, the Otoe conservation district was organized and certified to exist in accordance with the former Soil Conservation Districts Law, §§ 2-1901 et seq., and the subsequent amendments to that law. We also note that at the time of trial, counsel for the defendants stipulated to the fact that the Otoe conservation district was a political subdivision of the state. Accordingly, we determine that the defendants' claim is clearly erroneous and merits no further discussion.

We next consider whether the actions taken by the Otoe board of supervisors on June 30, 1972, were sufficient to transfer the assets of the conservation district to the defendants in trust. In this regard, we note that § 2-1519 was still in effect at the time the board of supervisors attempted to transfer the assets of the conservation district. Section 2-1519 provides in relevant part: "A majority of the supervisors shall constitute a quorum and the concurrence *of a majority of the supervisors* shall be required for the determination of any matter within their duties." (Emphasis supplied.) The issue which has arisen on appeal is whether the actions of the board of supervisors were supported by the requisite majority.

The evidence in the record reveals that the Otoe Soil and Water Conservation District had a meeting which was held on the evening of June 30, 1972, the evening

prior to the statutory merger of the district with the newly created natural resources districts. Present at the meeting were Vernon Niebuhr, chairman of the board, Paul Antes, and Melvin Kuhlenengel, each being a supervisor of the district. It appears the supervisors discussed the transfer of the conservation district's building, real estate, and other equipment into a trust for the people of Otoe County, Nebraska. A vote was taken, with Antes and Kuhlenengel voting in favor of the transfer, and the chairman abstaining. This vote was repeated upon subsequent motions made to sign the documents pertaining to the asset transfer and the appointment of the defendant trustees.

In their brief on appeal, the defendants contend that a simple majority of a quorum is all that was required under § 2-1519 in order for the supervisors to conduct business. We do not agree with the defendants' construction of the statute. In *Houser v. School Dist. of South Sioux City*, 189 Neb. 323, 202 N.W.2d 621 (1972), this court resolved a similar claim which arose over the meaning of the phrase "a majority of the members of the board," as found in Neb. Rev. Stat. § 79-1254 (Reissue 1976). In that case, the court was faced with the question as to whether the phrase meant a majority of the legally constituted quorum of the board, or a majority of all the members elected to the board. In its analysis, the court recognized that in the absence of a contrary statutory provision, the common-law rule applies that a majority of a quorum which constitutes a simple majority of a collective body may act for that body. *FTC v. Flotill Products*, 389 U.S. 179, 88 S. Ct. 401, 19 L. Ed. 2d 398 (1967). The court also found, however, that special provisions of a statute in regard to a particular subject will prevail over general provisions in the same or other statutes, so far as they are in conflict. See, *Albertson v. The State*, 9 Neb. 429, 2 N.W. 742 (1879). The court in *Houser* held that § 79-1254, which contained the phrase "a majority of the members of the board," was a specific statutory provi-

sion applicable to the voting on teachers in Class I, II, III, and VI districts, and concluded it took precedence over the common-law rule. "We see no distinction between the phrasing 'a majority of all members,' and 'a majority of members.' . . . The language used indicates to us the intention to require a majority of all members of the board, and not a majority of the quorum." *Id.* at 328, 202 N.W.2d at 624.

In the instant case, we determine that the phrase "the concurrence of a majority of the supervisors" must be interpreted to mean a majority of all the supervisors of the Otoe conservation district board. Section 2-1519 was a specific statutory section which was enacted by the Legislature to govern actions taken by conservancy district supervisors. Section 2-1519 defines a quorum as a majority of the supervisors, but specifically provides that "the concurrence of *a majority of the supervisors* shall be required for the determination of any matter within their duties." (Emphasis supplied.)

We determine that if only a simple majority of the quorum had been intended to control the action taken by the entire board of supervisors, there would be no need to insert the language "of the supervisors" into the statute. We must conclude that the Legislature did so for the purpose of preventing the common-law rule from applying and to require that a majority of all the members of the board of supervisors vote on the matters before the district board.

We also reject the defendants' contention that the abstention by Chairman Niebuhr must be counted as an affirmative vote in favor of the transfer of the district's assets. We find no specific authorization in the soil and water conservation districts law which would allow an abstention vote to be counted as an affirmative vote. Rather, § 2-1519 clearly provides that the vote of a majority of all the supervisors is required in order to constitute legal action by the board. See, also, Annot., 63 A.L.R.3d 1072 (1975), where the annotator states at 1079: "A substantial number of states have enacted

statutes which expressly require, or which have been construed as requiring, that action by a [government body] shall only be taken upon the majority vote of the total original number of council members, and in dealing with such provisions quite a few courts have inclined to the view that at least one purpose for their enactment was to insure that council action should not be taken save and except upon the actual, affirmative votes of such a majority. Such courts have usually held, therefore, that abstentions should not be considered or counted as affirmative votes in determining whether or not a particular matter or proposition has received the required total."

We find the defendants' arguments to be without merit and determine that the attempted transfer of the property to the trustees was void because it lacked the concurrence of a majority of the Otoe board of supervisors. We also determine that title to the property vested in Nemaha on July 1, 1972, by operation of law in accordance with § 2-3206. Since the Otoe conservation district had been formerly dissolved by statute on July 1, 1972, and had been merged with the natural resources districts, the subsequent meeting of the Otoe supervisors on July 3, 1972, did not effectuate a transfer of the district's assets to defendant trustees.

We next consider the defendants' contention that the present action must fail because the applicable statute of limitations had run prior to the time that Nemaha filed its petition. In this regard we note that Nemaha's first cause of action seeks to quiet title to the aforementioned real property in the natural resources district. In its second cause of action, Nemaha alleges that the defendants have wrongfully refused to return the balance of the personal property to the natural resources district and that the trustees have wrongfully converted such property to their own uses, to the detriment of Nemaha. In its third cause of action, Nemaha seeks the imposition of a constructive trust upon the assets retained by the defendants for the benefit of the

natural resources district.

With regard to Nemaha's action to quiet title to the real estate, we determine that the applicable statute of limitations is Neb. Rev. Stat. § 25-202 (Reissue 1979). Defendants contend in their brief on appeal that since the plaintiff's action with regard to the real estate was a quiet title action, a different statute of limitations should apply than the regular statute of limitations to recover real property. We disagree with that contention. The rule is well established that a suit to quiet title is an action for the recovery of real property within the statute of limitations applying to such an action. 53 C.J.S. *Limitations of Actions* § 36 (1948). The facts of this case clearly establish this action as one for the recovery of the real property under § 25-202, which provides in part: "An action for the recovery of the title or possession of lands, tenements or hereditaments . . . can only be brought within ten years after the cause of action shall have accrued . . . ." Since this action was commenced in 1977, and the cause of action accrued at the earliest on June 30, 1972, it is clear that the action was commenced by the plaintiff well within the period prescribed by the statute of limitations.

Nemaha also seeks to recover the property, both real and personal, which was wrongfully conveyed to the defendants, by means of the imposition of a constructive trust upon such property retained by the trustees. Under the facts presented in this case, there can be little doubt but that the trustees wrongfully acquired and retained the real and personal property that was to be assumed by the Nemaha and Lower Platte South Natural Resources Districts as provided in § 2-3206. We determine that a constructive trust arose for the benefit of the natural resources districts. In *Kuhlman v. Cargile*, 200 Neb. 150, 156-57, 262 N.W.2d 454, 458-59 (1978), this court stated: "Actions to declare a resulting or constructive trust are in equity. See, Marco v. Marco, 196 Neb. 313, 242 N.W.2d 867 (1976); Carey v. Humphries, 171 Neb. 578, 107 N.W.2d 20 (1961); Re-

statement, Restitution, § 160, p. 640. . . . When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee. Campbell v. Kirby, 195 Neb. 610, 239 N.W.2d 792 (1976). A constructive trust is a relationship, with respect to property, subjecting the person who holds title to the property to an equitable duty to convey it to another on the ground that his acquisition or retention of the property would constitute unjust enrichment. See, Jenkins v. Jenkins, 151 Neb. 113, 36 N.W.2d 637 (1949); Restatement, Restitution, § 160, p. 640; Nelson v. Rasmussen, 164 Neb. 274, 82 N.W.2d 418 (1957). 'A constructive trust is imposed to do equity and to prevent unjust enrichment.' Vogt v. Town & Country Realty of Lincoln, Inc., 194 Neb. 308, 231 N.W.2d 496 (1975). Each case involving the existence of a constructive trust is to be determined on the peculiar facts, circumstances, and conditions presented therein. Jenkins v. Jenkins, *supra.*"

In their brief on appeal, the defendants contend that the statute of limitations for bringing an action to impose a constructive trust is 4 years, which period is computed from the time that the party bringing the action knew or should have known of the act or acts complained of. The defendants contend that since the act complained of occurred on June 30, 1972, more than 4 years had elapsed before the plaintiff instituted this action on August 23, 1977. Defendants, therefore, argue that the present cause of action was not commenced within the applicable period prescribed in the statute of limitations.

In *Wiseman v. Guernsey*, 107 Neb. 647, 657, 187 N.W. 55, 59 (1922), this court stated as follows: "The statute of limitations does not begin to run against the rights of the beneficiaries of such a constructive trust until they are apprised of the fact that the trustee did not intend to carry out the provisions of the trust. In this case, they were not apprised of that fact until the

trustee repudiated it. The statute of limitations, therefore, had not run against the claim of the defendants."

The record in this case discloses the fact that the Nemaha Natural Resources District did not become apprised of the conveyance of the property to the defendants or of the trustees' intent not to return the property until 1975 and 1976. Don Hood, manager of the natural resources district, testified that he reviewed all of the minutes of Nemaha for the purpose of determining when the district was first notified that the real and personal property had been conveyed to the trustees. The record discloses that the first discussion as to the conveyance of the assets occurred on January 16, 1975. Furthermore, Hood testified that he met with the defendants in August of 1976 for the purpose of recovering the real and personal property. At this time the trustees refused to convey the real property and certain items of the personal property. In any event, we are able to determine that the natural resources district first became apprised of the conveyance on January 16, 1975.

It appears that Neb. Rev. Stat. § 25-207 (Reissue 1979) is the applicable statute of limitations with regard to the establishment of a constructive trust on personal property. Section 25-207 provides in pertinent part: "The following actions can only be brought within four years: . . . (2) an action for taking, detaining or injuring personal property, including actions for the specific recovery of personal property . . . ." Based on the facts of this case and our holding in *Wiseman v. Guernsey, supra,* we determine that, at the earliest, Nemaha was not apprised of the conveyance or of the defendants' intention not to return the assets until January 16, 1975. The action by Nemaha for the imposition of a constructive trust on the personal property was commenced on August 23, 1977, well within the 4-year statute of limitations.

Defendants also contend that the statute creating the natural resources districts is unconstitutional because

it results in unconstitutional inequality of taxation. It is to be noted, however, that the defendants did not argue this issue in their oral presentation to this court, nor is there anything in the record to indicate that a copy of the brief assigning this issue was served on the Attorney General within 5 days of the filing of the brief in the Supreme Court. See Neb. Ct. R. 8.a.2.(3) and 18 (Rev. 1977). This being so, the issue is not properly before us. We also determine that defendants' remaining assignments of error are without merit.

Accordingly, we conclude that the attempted conveyance of the assets of the Otoe Soil and Water Conservation District to the defendant trustees was void. Equity requires that a constructive trust be imposed on the personal property in the possession of the defendants until such time as it is returned to Nemaha. We also quiet title to the real property in question in the Nemaha Natural Resources District. The defendants have no right to own or retain, as individuals or trustees, the real and personal property held under the purported trust agreement, and to allow them to retain said assets would amount to an unjust enrichment. For the reasons stated herein, the judgment of the District Court must be, and hereby is, affirmed.

AFFIRMED.