REQUESTED BY: Marilyn J. Hasselbalch, Director Nebraska Real Estate Appraiser Board
You have posed a number of questions to us pertaining to proper procedures and the ability of the Real Estate Appraiser Board (the "Board") to take action at a meeting of the Board where not all members are present and voting. You explain that the issues have arisen because one of the five board members has resigned, leaving the Board with four members, the number that Neb. Rev. Stat. § 76-2222(4) (2003) indicates constitutes a quorum, and that recently, one or more members have abstained from voting on particular matters due to concerns about a possible conflict of interest. You anticipate that such circumstances may occur again in the future.
You note that the law is silent regarding the number of votes required to carry a measure before the Board. You then ask whether the Board may rule that a majority vote is required to adopt a measure, whether four or five members are present. Since a majority would be the same number, three, regardless of whether four or five Board members were present, we sought clarification of your question. You then explained that what you wanted to know was whether the Board could require a minimum of three votes to adopt a measure, eliminating the possibility that a measure could be adopted by a simple majority of those present and voting. You gave an example of a situation where four were present, two voted, "aye," one "nay," and the fourth abstained. Apparently, there was some concern that where less than four voted, a mere two votes might be sufficient to pass a measure.
I. Number of Votes Ordinarily Required to Adopt a Measure
The general rule is that, in the absence of a contrary statutory provision, a majority of a quorum which constitutes a simple majority of a collective body may act for that body. Federal Trade Commission v. Flothill Products, Inc., 389 U.S. 179, 88 S.Ct. 401, 19 L. Ed. 2d 398
(1967); Jeter v. Board of Education, 231 Neb. 80, 435 N.W.2d 170 (1989); Chase v. Board of Trustees, 194 Neb. 688, 235 N.W.2d 223 (1975); Houser v. School Dist. of South Sioux City, 189 Neb. 323, 202 N.W.2d 621
(1972); Op. Atty. Gen. No. 97011 (February 14, 1997); Op. Atty. Gen. No. 97009 (January 23, 1997); Op. Atty. Gen. No. 96048 (June 7, 1996). See also In re State Treasurer's Settlement, 51 Neb. 116, 70 N.W. 532
(1897); Annot., 63 A.L.R.3d 1072, 1077 (1975).
With respect to your Board, that rule has been modified by statute, with four members making a quorum instead of the three required at common law. Neb. Rev. Stat. § 76-2222(4) (2003). However, we do not believe that the increase in the number required for a quorum would affect that part of the rule which recognizes the ability of a majority of the quorum to act for the body. Therefore, whether all five members of the board are present or there is a quorum of four, a majority vote of three is all that would ordinarily be required to take action. No Board rule is required to accomplish this.
It is possible, however, that under certain voting scenarios, a court could conclude that a measure passed even though it received fewer than three votes. According to 59 Am. Jur. 2d, Parliamentary Law, § 10 at pp. 362-63 (1987), the rule is that "[i]n the absence of an express regulation to the contrary, when a quorum is present a proposition is carried by a majority of the votes cast, and it is not necessary that at least a quorum cast votes, since the exercise of law-making power is not stopped by the mere silence and inaction of some who are present." (Footnotes omitted.) Similarly, 67A C.J.S., Parliamentary Law, § 8 at p. 621 (1978), states that:
 Where a legal quorum is present, the general rule, in the absence of provision to the contrary, is that a proposition is carried by a majority of the legal votes cast. Accordingly, where a legal quorum is present, a proposition is carried by a majority of the votes cast, although some of the members present refuse to vote.
So, under the "majority of votes cast" approach, one or two votes could be enough to pass a particular measure.
For reasons discussed in more detail below, it is unclear whether Nebraska courts would accept the "majority of votes cast" rule as an accurate reflection of the common law, or whether they would apply that rule to the Board in the absence of express statutory authorization. As a result, we cannot rule out the possibility that one or two persons could decide the outcome of the Board's business. To eliminate this possibility and reduce uncertainty, the Board could adopt a rule requiring a minimum number of coinciding votes for the adoption of a measure. If the Board wants to differentiate between those measures which are defeated from those which simply did not garner sufficient "aye" votes on a particular occasion, then a rule could be drafted to accomplish this, too.[1]
II. Need for Abstention or Recusal
We will next turn to the question of what should be done if the Board begins to discuss a matter where a board member has a conflict of interest or which involves a possible violation of law or regulation by a member. You ask whether the board member should refrain from participating in the discussion and refrain from voting and, if so, whether it is necessary for the member to leave the room during the discussion and vote. You also ask about the difference between abstention and recusal.
The statutes creating the Real Estate Appraiser Board are silent on the subject of conflicts of interest. However, we believe that members of the Real Estate Appraiser Board are subject to the conflict of interest provisions in Nebraska Political Accountability and Disclosure Act. Therefore, Board members would be subject to Neb. Rev. Stat. §§ 49-1499.01 and 49-1499.02
(2004). Section 49-1499.01 generally prohibits an official from employing, recommending or supervising the employment of an immediate family member in state government. Section 49-1499.02 requires an official or employee to provide a written explanatory statement to the Accountability and Disclosure Commission (the "Commission") and to his or her immediate supervisor, if applicable, when confronted with a situation where the officer or employee might take action or make a decision in his or her official capacity which would be to the financial benefit or detriment of the officer or employee, a member of the individual's immediate family, or to a business with which he or she is associated. Disciplinary matters involving the board member would probably affect the board member's finances and trigger this disclosure requirement, too. In such conflict situations, where the person with the conflict has no supervisor who can assign the matter to another, then the person is to follow instructions from the Commission.
The apparent goal of Neb. Rev. Stat. § 49-1499.02(1) is to remove the person from influence over the action or decision on the matter concerning which he or she has a conflict of interest, but it is not clear at what point the person is obliged to exit the proceeding. Since the timing of the Board member's departure or disqualification conceivably could affect the presence of a quorum, departure timing may be especially important to boards or commissions such as yours which are operating with the minimum number of members required to constitute a quorum.
Neb. Rev. Stat. § 49-1499.02(2) does provide an exception from disqualification:
 This section does not prevent such a person from (a) making or participating in the making of a governmental decision to the extent that the individual's participation is legally required for the action or decision to be made. . . . A person acting pursuant to subdivision (a) of this subsection shall report the occurrence to the commission.
However, we have found little guidance in Nebraska case law, earlier opinions of this office, or rules of the Commission regarding the application of this exception. Under Neb. Rev. Stat. § 49-14,100 (2004), the Commission may issue advisory opinions upon the request of any person who is in doubt as to the propriety of the action proposed to be taken by him. Such an advisory opinion may serve as a complete defense to a charge brought pursuant to the Act, assuming the person has described the situation fully and accurately. Consequently, we recommend that you or the affected board member contact the Commission for guidance on the application of § 49-1499.02(2). In addition, in any instance where a board member may have a conflict, that Board member should alert the Accountability and Disclosure Commission and seek its guidance. If a conflict is deemed to exist, it is likely that the least the Board member will be asked to do is to abstain. He or she may even be asked to absent himself or herself entirely during any discussion of the matter involving the conflict.
You also asked about the difference between "abstention" and "recusal." Abstention and recusal are closely related concepts. The first definition of "abstain" in Black's Law Dictionary (8th ed. 2004) is "[t]o voluntarily refrain from doing something, such as voting in a deliberative assembly." However, to abstain also means, "(Of a federal court) to refrain from exercising jurisdiction over a matter." Id. It is in that latter sense that abstention most resembles recusal. In Black's, recusal is defined as "[r]emoval of oneself as a judge or policy-maker in a particular matter, esp. because of a conflict of interest." Id. Therefore, refraining from voting is considered "abstention." One who refrains from voting "abstains." Removing oneself from consideration of an issue is "recusal." We tend to think of recusal in the context of adjudication, and view it as generally being accompanied by a greater or earlier separation of oneself from the proceeding than may be the case with abstention. Abstention focuses on the final decision, where recusal usually entails withdrawing from the entire proceeding.
III. Effect of Abstention or Recusal on Presence of a Quorum
You have asked about the impact on a quorum of a board member's disqualification due to a conflict of interest. This area of the law is not entirely clear. The presence of a quorum is critical because a quorum is essential to the transaction of any business, other than adjournment or continuing a matter to a later date or time. 5 Fletcher Cyclopedia Corporations sec. 2013, p. 88 (rev. 2003). According to Robert's Rules of Order, ch. XI, sec. 39, p. 293 (reprint 1981) (1970 ed.): "A quorum in an assembly is the number of members entitled to vote who must be present in order that business can be legally transacted. The quorum refers to the number of such members present, not to the number actually voting on a particular question." The definition in Black's Law Dictionary (8th ed. 2004) is consistent with the foregoing authorities. The term "quorum" was also discussed by our supreme court in the context of a judicial review panel in Hagelstein v. Swift-Eckrich Div. Of ConAgra, 257 Neb. 312, 597 N.W.2d 394 (1999), appeal after remand, 261 Neb. 305, 622 N.W.2d 663:
 It is well established that a `quorum' is defined as `the number of persons that are members of a body when assembled who are legally competent to transact the business of such a body.' . . . The commonly recognized definition of a quorum is that it is such a number of a body as is competent to transact business in the absence of the other members. . . . `Quorum' has also been defined as "'[t]he number of members who must be present . . . before business may be transacted.'"
257 Neb. at 320, 597 N.W.2d at 401. (Emphasis added; Citations omitted).
Ordinarily, the fact that a member of a board declines to vote has no effect on the presence of a quorum. 2 Fletcher Cyclopedia Corporations sec. 425, p. 286 (rev. 2003). However, where a member is disqualified due to a conflict the situation may be different. It has been held that "[a] member who recuses himself or is disqualified to participate in a matter due to a conflict of interest, bias, or other good cause may not be counted for purposes of a quorum at the meeting where the board acts upon the matter." Garris v. Governing Bd. of South Carolina Reinsurance Facility, 333 S.C. 432,453, 511 S.E.2d 48, 59 (1998), citing Talbot v. James,259 S.C. 73, 82, 190 S.E.2d 759, 764 (1972) and King v. New Jersey Racing Comm'n, 103 N.J. 412, 511 A.2d 615, 618
(N.J. 1986). See also 59 Am. Jur. 2d, Parliamentary Law, § 7 at p. 359 (1987). The inclusion of the words "entitled to vote" in the definition of quorum found in Robert's Rules of Order could lead one to the same conclusion.
The Attorney General of Kansas has provided the following succinct summary of the law in this area:
 Participation in comprising a quorum does not appear permissible if the individual is disqualified from voting. `A disqualification is deemed the same as a vacancy when determining the number of members of the council' . . . [I]f common law applies, a disqualified member may reduce the number of the body and may therefore impact upon the number required to comprise a quorum or bind the body.
Kan. Atty. Gen. Op. No. 91-73 (July 9, 1991), quoting McQuillan, Municipal Corporations, § 13.27 (1985).
The view that a disqualified member does not count toward the quorum apparently is not universally held, however. One authority in the corporate arena, although describing the "does not count toward the quorum" proposition as the majority and better one, acknowledges the existence of case authority which recognizes an interested director's eligibility for quorum purposes. 2 Fletcher Cyclopedia Corporations, sec. 426, p. 287 (rev. 2003). That same authority noted that the "does not count toward quorum" rule has been changed by statute in a number of states, and that the form of the Model Business Corporations Act adopted in a number of jurisdictions removes the disqualification upon full disclosure or if the contract or transaction being dealt with is fair and reasonable as to the corporation. Id. A policy consideration relied upon in favor of counting the disqualified member for purposes of the quorum requirement is that some bodies would otherwise be unable to carry on the public's business. Another consideration is that strict requirements could encourage an otherwise disqualified individual to participate in order to satisfy the statutory requirements. See In re 1989 Street Improvement Program v. Denmark Township, 483 N.W.2d 508 (Minn.App. 1992) (holding that for purposes of statutory "four-fifths of membership" vote requirement, "members" means only those qualified to vote).
The Nebraska Supreme Court's opinion in Hagelstein v. Swift-Eckrich Div. Of ConAgra, 257 Neb. 312, 597 N.W.2d 394
(1999), provides some indication as to how our court might rule, at least where a shortage of members is due to a vacancy. In that case, the statute provided that three judges of the Workers' Compensation Court would constitute a quorum for a review of a disputed claim for compensation. A matter had proceeded to hearing before three judges, but one of the judges died before a decision was rendered. The remaining two members decided the case. On appeal, the court ruled that the statute was clear; a review panel of the compensation court must be composed of no less than three judges in order to have authority to act under the statutes.
Perhaps the court will be more flexible where there is not a pool of other eligible individuals to supply the shortage, but we believe it is more likely that the court would hold fast to the statutory number specified for a quorum. Also, the case tends to support a conclusion that the court would not permit a member who was present but disqualified due to a conflict of interest to be counted toward the quorum. We say this because the court explained that the review to which an aggrieved party was entitled by law "must at least include participation [of all three judges], either concurring or dissenting, in the review panel's ultimate decision." Id. at 321, 597 N.W.2d at 401. A disqualified member would presumably participate no more than an absent member would.
The purpose for a quorum is to ensure there is a sufficient number of individuals who are present and able to act. In the Board's case, that number is four. A vacancy of one and disqualification of another, or the disqualification of more than one member would drop the Board below the number required for a quorum, notwithstanding that the disqualified member or members may be present at the meeting. We would add that in our view the same rule should apply regardless of whether the agenda item concerning which a member has some disqualifying interest is but one of several items on the agenda or is the only item. Where the item was one of several on the agenda, the quorum would evaporate for purposes of that agenda item.
It bears repeating that one may not know until after consulting with the Accountability and Disclosure Commission whether a disqualifying interest will actually prevent a member's participation. Even if Nebraska courts follow the majority "does not count toward quorum" view, if the Accountability and Disclosure Commission concludes that a conflict is not a disqualifying one, or that the member may participate notwithstanding the existence of a serious conflict, then it is a near certainty that the general rule would give way, and the board member would be counted.
IV. Effect of Abstention on Number of Votes Required
Your final question goes to whether an abstention would be considered a vote cast by one of the quorum. You give an example where four members are present, but one abstains because of a conflict of interest, and then ask whether in such case two "aye" votes would be sufficient to adopt a measure. Put another way, if there is a quorum present, may a measure be adopted by the affirmative votes of a majority of those actually voting on the matter even if that number is less than the majority of the quorum?
The example given presumes that the member with a conflict of interest would be counted toward the quorum. As discussed in the preceding section, we tend to believe that the member is not entitled to be counted toward the quorum, and that the number required for a quorum will not be reduced due to the member's disqualification. If there is no quorum, then the Board cannot act. If the Accountability and Disclosure Commission informs the conflicted board member that he may participate out of necessity, then abstention by that board member probably will not be an issue, either. It is unlikely that the Commission would permit the member to remain in the meeting and participate in the discussions but not allow him to vote. With those thoughts in mind, we will proceed to a discussion of how abstentions are to be treated.
In the hypothetical you gave us, a member of a board with a conflict of interest is allowed to be counted toward a quorum, but abstains from voting. Three other members are present. Two vote "aye" and the other votes, "nay." Was the measure adopted? We have already touched upon this question in the first section of this opinion. The cases in this area adopt a variety of approaches.
Those authorities which hold to the view that one looks to whether the measure received the "majority of votes cast" would probably conclude that the measure at issue in the hypothetical did pass. Since only three votes were cast, the two "aye" votes would be sufficient to adopt the measure. See Minn. Op. Atty. Gen. No. 471M (Oct. 30, 1986): ("By far the majority rule . . . is that, absent a specific statutory voting requirement, if a quorum is present, the affirmative vote of a majority of those actually voting on the matter is sufficient to carry the issue," citing, inter alia, 4 McQuillan, Municipal Corporations 13.32 and Annot., 63 A.L.R.3d 1072 (1975)). Jurisdictions which have adopted this rule seem averse to governmental inaction and indecision. See Northwestern Bell Telephone Company v. Board of Commissioners of the City of Fargo, 211 N.W.2d 399
(N.D. 1973).
Apart from the "majority of the votes cast" rule, other theories or approaches are sometimes employed when there is an abstention in an effort to satisfy the "majority of the quorum" requirement. For example, Minn. Op. Atty. Gen. No. 161-a-20 (June 3, 1987) suggested the following rule: "Abstentions may be considered to be acquiescence in the vote of the majority and are counted, therefore, with the votes of the majority."[2]
Other authorities and jurisdictions are less receptive toward the "abstention counts with the majority" rule, at least where the statutes require the concurring vote of a specified percentage or majority of the total membership of the body. See Haven v. Gregg, 244 Kan. 117,766 P.2d 143 (1988) (statutory voting requirement modified common law rule that abstention counts as vote with majority); Haw. Atty. Gen. Op. No. 85-11 (July 19, 1985). Nebraska seems to be in line with that latter group, as evidenced by Nemaha Nat. Resources Dist. v. Neeman, 210 Neb. 442, 315 N.W.2d 619 (1982) and State ex rel. Grosshans v. Gray, 23 Neb. 365, 36 N.W. 577
(1888).
The Gray case involved the validity of action taken by a city council composed of four members, all of whom were present. Two voted "aye," two abstained, and the mayor, apparently believing the abstentions caused a tie, cast the third "aye" vote. The law indicated action could be taken only upon the concurrence of the majority of all members elected to the council. The court concluded that the measure did not pass; two was not a majority of five, and the abstentions did not count as "no" votes creating a tie, so the mayor had no right to vote. The abstentions obviously were not counted toward the majority.
In the Neeman case, the Nebraska Supreme Court considered the validity of action taken by the board of a soil conservation district. The board consisted of five supervisors. Three were present at the meeting. Two voted in favor of the measure and one abstained. By statute, a majority of the supervisors constituted a quorum, and action required the concurrence of a majority of the supervisors. The court concluded that the statute altered the common law rule that a measure could be adopted by the vote of a majority of the quorum. Instead, it would take three votes; a majority of the five-member board. The court rejected the argument that the abstention should be counted with the majority, explaining:
 We find no specific authorization in the soil and water conservation districts law which would allow an abstention or to be counted as an affirmative vote. Rather, § 2-1519 clearly provides that the vote of a majority of all the supervisors is required in order to constitute legal action by the board. See, also, Annot., 63 A.L.R.3d 1072 (1975), where the annotator states at 1079:
 A substantial number of states have enacted statutes which expressly require, or which have been construed as requiring, that action by a [government body] shall only be taken upon the majority vote of the total original number of council members, and in dealing with such provisions quite a few courts have inclined to the view that at least one purpose for their enactment was to insure that council action should not be taken save and except upon the actual, affirmative votes of such a majority. Such courts have usually held, therefore, that abstentions should not be considered or counted as affirmative votes in determining whether or not a particular matter or proposition has received the required total.
210 Neb. at 452-53, 315 N.W.2d at 625-626. It is not clear whether the court in the Neeman case would have reached the same conclusion in a situation where, as here, the statute was silent regarding the number of votes required to take action by the body at issue. As a result, we don't know if the court would employ the "abstention counts with the majority" rule in cases where the common law provides the guide — cases where the statute does not specify the percentage or number of votes required to pass a measure. And, the Gray case from 1888 does not assist in that inquiry because it, too, involved a statute which altered the common law "majority of quorum" (or "majority of those voting, provided a quorum is present" rule, as the case may be).
So, we are left with having to predict how our court is apt to decide the matter in light of the various approaches and other factors discussed above.[3] Based on the Nebraska cases which describe the common law rule as looking to a majority of the quorum, and considering the Neeman court's mention of the need for a statute to authorize the counting of abstentions and the absence of such express authorization here, we are inclined to believe that the court will not count abstentions with the majority. Bolstering this conclusion is the fact that the quorum for your board was statutorily set at four, when at common law it would be three. This suggests the Legislature did not want the group to be able to act with a very small number. The "abstention counts with the majority" and "majority of votes cast" approaches run counter to such intent. For the same reason, we tend to believe our court will not permit a measure to carry by a majority of the votes cast, if that number is less than the majority of the legal quorum.
 CONCLUSION
To recap in the context of your questions and your board, ordinarily three votes would be required to adopt a measure. The Board may adopt a rule specifying that a minimum of three concurring votes are required. This would make things more certain and ensure that there is relatively broad support for a measure. To make it even more sure, you may want to add that the rule applies regardless of abstentions, vacancies, and disqualifications.
A member who is present but abstains for reasons other than a disqualification is counted toward the quorum. Members who have a conflict of interest are ordinarily considered disqualified, and are not counted toward the quorum. However, the member should inform the Accountability and Disclosure Commission regarding the circumstances and seek the Commission's direction. The Commission may permit the member to act.
Although not free from doubt, it is not believed that an abstention will be counted with the majority. Also, absent a rule to the contrary, we tend to believe that a measure cannot be adopted without the concurring votes of a majority of the legal quorum. A majority of the votes cast may not be enough.
Sincerely,
 JON BRUNING Attorney General
 Dale A. Comer Mark D. Starr Assistant Attorneys General
APPROVED:
[1] The ability of a governing body to adopt rules for its internal operation is supported by Op. Atty. Gen. No. 97011 (February 14, 1997) and Op. Atty. Gen. No. 97009 (January 23, 1997). Also, the Board has rulemaking authority under Neb. Rev. Stat. § 76-2223 (2003), and the Administrative Procedure Act defines the terms "rule or regulation" as "any rule, regulation, or standard issued by an agency, including the amendment or repeal thereof whether with or without prior hearing and designed to implement, interpret, or make specific the law enforced or administered by it or governing its organization or procedure." Neb. Rev. Stat. § 84-901(2) (1999) (emphasis added).
[2] In Minn. Op. Atty. Gen. No. 471M (Oct. 30, 1986), it was reported that courts had been disinclined to count an abstention due to a disqualifying conflict as an affirmative vote toward the requisite majority, but that the current trend was to either count such an abstention with the voting majority or as a vacancy, thereby possibly reducing the number of votes required to act. The latter approach was said to be the "logical solution," according to Annot., 63 A.L.R.3d 1072, 1980 (1975), since it was considered "somewhat inappropriate" to count it with the majority.
[3] The question is further complicated because we are unsure whether the "abstention counts with the majority" and "majority of votes cast" rules actually comport with common law, at least where a decision making body is definite in number. In Cromarty v. Leonard, 26 Misc.2d 405,211 N.Y.S.2d 933 (1961), the court wrote that it had reviewed almost fifty decisions dealing with the subject and found them in hopeless conflict; each resting upon the peculiar quorum requirements and verbiage of the governing charter. 211 N.Y.S.2d at 937. Moreover, disagreement about the significance of particular cases in this area and how they may be characterized is not uncommon.